IN RE the MARRIAGE OF:

Bonita J. WEIS, Petitioner-Respondent,

v.

Clayton F. WEIS, Respondent-Appellant.

Court of Appeals

*No. 96–3576. Submitted on briefs September 24, 1997.—Decided November 12, 1997.*

(Also reported in 572 N.W.2d 123.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Kirt J.E. Ludwig* of Burlington.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert J. Grady* of *Fetek & Grady, S.C.* of Racine.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.   Clayton F. Weis appeals from a trial court order increasing his child support obligation. He claims that the trial court erred when it determined his

gross income by imputing to him the rental value of the home he lives in rent free, including the undistributed income from a partnership in which he is a 50% owner and adding the health insurance premiums paid by the partnership for his benefit.

We hold that because the home Clayton lived in was not an asset available for imputing income, its rental value should not have been imputed to his income. We also hold that Clayton does not have an ownership interest in the partnership sufficient for him to individually exercise control over the partnership's undistributed earnings, and it was error for the trial court to include Clayton's share of the undistributed earnings in his gross income. Finally, we hold that the trial court properly included in Clayton's gross income the partnership's health insurance payments because they are considered gross income under the federal tax code. We reverse in part, affirm in part and remand the cause for further proceedings.

Clayton and Bonita J. Weis were divorced in 1987. The parties had three minor children. The trial court awarded Bonita primary placement of the children and ordered Clayton to pay child support.

Clayton is a farmer and at the time of the divorce was a 50% partner in a farm partnership with his brother. As part of the property division in the divorce action, Clayton was awarded his one-half interest in the farm partnership but was required to make payments to Bonita to equalize the division. The partnership owns a farm and its assets on the farm include two farmhouses, one of which was occupied by Clayton and the other by his brother. Since their divorce, Clayton has remarried and continues to live in the farmhouse.

In 1995, Bonita moved to modify Clayton's child support obligation, claiming that Clayton's financial circumstances had changed. At the hearing, both sides contested the true amount of income Clayton drew from the partnership in 1995. The trial court found that Clayton's 1995 income had increased to $41,226, thereby increasing his child support obligation. The trial court included the rental value of the farmhouse, Clayton's share of the partnership's undistributed profits and the partnership's payment of his health insurance premiums. Clayton objects to all three inclusions.

Resolution of all three issues requires that we interpret WIS. ADM. CODE ch. HSS 80, the regulation outlining the standards to be employed when calculating child support obligations. The rules governing the construction of administrative rules are the same as those applicable to statutory construction. *See State v. Poly-America, Inc.,* 164 Wis. 2d 238, 243, 474 N.W.2d 770, 772 (Ct. App. 1991). Therefore, the application of an administrative rule to undisputed facts is a question of law that we decide independently without deference to the trial court. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

First, we address the issue of whether it was proper for the trial court to impute $8711 to Clayton's income, which represented the rental value of the farmhouse. Bonita argues that the rental value of the home should be imputed because Clayton lives in the home rent free and the fair rental value of the use of the property is never recognized as income on his income tax return. This allows Clayton to distort his true income and pay less child support. Bonita contends that the trial court had the power to impute the rental value of the farmhouse, a partnership asset, to Clay-

ton's income because under WIS. ADM. CODE § HSS 80.02(15), it is an unproductive asset; the partnership has foregone any rental income by allowing Clayton to live in the house free of charge. Therefore, the fair rental value of the farmhouse should be imputed because it represents the income that would flow through to Clayton if the partnership utilized the farmhouse and rented it out to a third party.

Under WIS. ADM. CODE § HSS 80.02(15), " '[i]mputed income for child support' means the amount of income ascribed to assets which are unproductive . . . ." Section HSS 80.02(3) defines those assets from which the trial court can impute income. It provides in relevant part:

> "Assets available for imputing income" means all real or personal property over which a payer can exercise ownership or control.

Because the farmhouse is partnership property, the issue is whether Clayton can exercise control over the farmhouse.

To control something is to have the power or authority to guide or manage, to have directing or restraining domination. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 496 (1976). In this case, the partnership agreement gives both Clayton and his brother a 50% interest in all of the real property of the partnership and Clayton's property rights in the farmhouse are that of a tenant in partnership with his brother. *See* § 178.21(2), STATS. The incidents of a tenancy in partnership are such that Clayton has no authority to assign to a third party his interest in the farmhouse or to utilize the farmhouse for a nonpartnership purpose without first obtaining the consent of his brother. *See* § 178.21(3)(a) and (b). Moreover, under the

partnership agreement, Clayton and his brother share equally in all of the management decisions of the partnership. Although this gives Clayton a restraining power in that he may veto his brother's decisions with regard to the farmhouse, it also means that Clayton lacks the power or authority to act unilaterally with respect to the farmhouse.

Given these facts, Clayton does not have "control" over the farmhouse because he does not have directing or restraining domination. Neither Clayton's partnership agreement nor the ownership rights give him the authority to manage the property as he sees fit; he does not have the final say in the management of the partnership or its assets. Rather, all decisions regarding the utilization of the farmhouse in the partnership's business must be made in conjunction with his brother.

■

Bonita contends that the partnership agreement does not reflect reality; we should look beyond the partnership agreement because Clayton in fact has sole control over the farmhouse. However, the trial court made no finding that Clayton had the authority to unilaterally manage the partnership, the farmhouse or any other partnership asset. Therefore, the partnership agreement controls and we reject Bonita's argument. The farmhouse is not an asset available for imputing income under WIS. ADM. CODE § HSS 80.02(3), and we reverse this portion of the trial court's decision.[1]

---

[1] Clayton also argues that the farmhouse is not an unproductive asset under WIS. ADM. CODE § HSS 80.02(15). However, because our conclusion that the farmhouse is not an asset available for imputing income to Clayton resolves the issue of whether the rental value of the farmhouse could be imputed, we decline to address this issue. *See Gross v. Hoffman,* 227 Wis.

Next, we turn to the issue of whether the trial court could include in Clayton's income his share of the partnership's undistributed profits. The trial court determined that at the end of 1995 there were undistributed profits remaining in the partnership and it attributed to Clayton's gross income an additional $16,972, which represented his share of the undistributed profits. Bonita contends that this was proper because Clayton was keeping profits in the partnership in order to distort his gross income and reduce his child support obligations. She argues that retaining earnings in the partnership was merely a ruse to shirk child support because Clayton knew his 1995 income tax returns would be used by the trial court to determine his child support obligation.

WISCONSIN ADM. CODE § HSS 80.02(13)(g) states that a court may include in a payor's gross income the undistributed profits of a partnership. It specifies that gross income includes:

> Undistributed income of . . . any partnership . . . in which the payer has an ownership interest sufficient to individually exercise control or to access the earnings of the business . . . .

Therefore, if the court determines that a payor of child support with an ownership interest in a partnership has the ability to individually exercise control or access the undistributed earnings of the partnership, those earnings can be considered as gross income available for child support. In addition to individual control, the court must also determine whether there is a valid business reason to retain earnings in the partnership

---

296, 300, 277 N.W. 663, 665 (1938) (if decision on one point disposes of appeal, appellate court will not decide other issues raised).

141

or whether the retained earnings are a pretext to manipulate income and avoid the payor's child support obligations. *See Lendman v. Lendman,* 157 Wis. 2d 606, 615, 460 N.W.2d 781, 785 (Ct. App. 1990) (courts must determine whether retained earnings are a necessary adjunct of a well-managed business or a pretext to disguise income). Only after these two conditions are met can the court look to retained earnings when calculating the payor's gross income.

Clayton is only a 50% owner of the partnership and he shares equally with his brother in all of the decisions regarding the partnership. He does not have the authority to "individually" exercise control over the partnership or access the earnings of the partnership. If he did so, he would violate the partnership agreement.

Bonita's claim is essentially that Clayton, with his brother's consent, manipulated the partnership in order to distort his income and therefore we should ignore the partnership agreement and conclude that, for the purpose of WIS. ADM. CODE § HSS 80.02(13)(g), he could "individually exercise control" over the partnership's assets. As we stated above, unless the trial court finds that Clayton did in fact have the authority to unilaterally manage the partnership, we will not look beyond the partnership agreement. The trial court made no such finding. Therefore, the undistributed earnings of the partnership should not have been used to determine Clayton's gross income because he could not individually access these partnership earnings. We reverse the trial court on this issue.

Finally, we turn to the issue of whether the trial court erred when it included in Clayton's gross income the $2293 in health insurance premiums paid by the

partnership for his benefit. Clayton points out that under the Internal Revenue Code employees of a corporation or business do not have to include in gross income the value of health insurance benefits. *See* 26 U.S.C. § 106 (West 1986 & Supp. 1997). He argues that "[s]ince health insurance benefits paid by an employer for the benefit of an employee are not generally included in the gross income of that employee, the health insurance premiums paid by the [partnership] should not have been considered by the Trial Court as part of [his] gross income available for child support." He contends that it would be blatantly unfair to conclude otherwise.

WISCONSIN ADM. CODE § HSS 80.02(13)(a) defines gross income to include "all income considered federal gross income under 26 CFR 1.61–1[.]" The federal code provides in part:

> (a) General definition. Gross income means all income from whatever source derived, *unless excluded by law*. Gross income includes income realized in any form, whether in money, property, or services. [Emphasis added.]

26 C.F.R. § 1.61–1 (West 1997).

Clayton concedes that the partnership's payments of the health insurance premiums for his benefit are considered gross income under the federal tax code, and he cites no law excluding these payments from gross income. Therefore, the health insurance premiums are included in gross income under WIS. ADM. CODE § HSS 80.02(13)(a). Although the distinction between health insurance premiums for partners in a partnership and employees of a corporation may in fact be illogical, it is within the province of the legislature, not

this court, to modify the definition of gross income under § HSS 80.02(13) and grant Clayton relief. We conclude that the trial court properly included the payment of health insurance premiums in Clayton's gross income and affirm.

To conclude, the trial court erred by including the rental value of the farmhouse and the partnership's undistributed profits in Clayton's gross income. It did not err when it included in gross income the value of the partnership's health insurance premiums paid on Clayton's behalf. We remand for a re-evaluation of Clayton's gross income in light of this opinion.

No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.