In re the Marriage of:

Timothy J. Winters,
Petitioner-Respondent,

v.

Linda Winters,
Respondent-Appellant,†

Adair,
Garnishee.

Court of Appeals

*No. 2004AP747. Submitted on briefs February 3, 2005.
—Decided April 13, 2005.*

2005 WI App 94

(Also reported in 699 N.W.2d 229.)

† Petition to review denied 8-25-05.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Carl Robert Scholz* of *Carl Robert Scholz, S.C.*, Mequon.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas D. Klein* and *Jennifer J. Van Kirk* of *Peckerman & Klein*, Milwaukee.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J.   Linda Winters appeals from an order addressing contested child support issues. Linda

and Timothy J. Winters divorced in 1993 and Linda now seeks judicial review of Timothy's child support obligation. She contends that Timothy improperly excluded investment profit when calculating his child support obligation and that he failed to set aside a certain percentage of the cash distributions from his investment for their children's post-high school education expenses. She further contends that the circuit court erred in ruling that her discovery demand exceeded the bounds of information reasonably calculated to lead to discovery of admissible evidence. The circuit court ruled in favor of Timothy. We agree and affirm the order of the circuit court.

## BACKGROUND

¶ ·2.  In 1993 Linda and Timothy divorced. Pursuant to the marital settlement agreement, Timothy is obligated to pay 25% of his gross income as child support for his two children. At the time of the divorce, Timothy owned 200 shares of stock in Precision Color Graphics, Inc., which was awarded to him in the settlement agreement. The marital settlement agreement provided that dividends, distributions or proceeds from the sale or redemption of this stock would be divided; Timothy would receive 90%, and 5% would go to each of the parties' two children. According to the agreement, that portion of the "funds awarded to the minor children may be deposited in trust . . . for distribution to them outright at age 24, or for application to payment of tuition and room and board expenses for post-high school education."

¶ 3.  Timothy's ownership interest in Precision Color Graphics is 10%, a minority interest. Between 1993 and 2002, Timothy reported a total of $341,018 on his tax returns as his proportionate share of Precision

Color's corporate net profits. Between 1995 and 2002, Timothy reported $113,848 in cash distributions from the company. Precision Color is an S corporation, and therefore taxes are paid by the shareholders. Precision Color retains all of its earnings, distributing cash to allow shareholders to pay the tax liability created by the earnings. Pursuant to Precision Color's Stock Redemption Agreement, Timothy is permitted to sell his stock. However, as a minority shareholder, he has no power to force distribution of the retained earnings of the company.

¶ 4.  In February 2002, the State filed a motion to convert Timothy's child support obligation from an income percentage to a set dollar amount. Timothy's child support obligation was converted to a fixed rate based on his employment income only. At that time, Linda noticed the Precision Color income Timothy had reported on his 1998 to 2001 income tax returns. Linda subsequently filed an Order to Show Cause seeking to include Timothy's share of the undistributed net profits as well as the cash distributions from Precision Color when calculating his child support obligation. She further sought to compel Timothy to place 10% (5% per child) of the cash distributions he received into post-high school education accounts. In addition, Linda sought discovery of financial documents she alleged would support her claim that Timothy was underreporting his income for child support purposes.

¶ 5.  The circuit court ruled in Timothy's favor, holding that neither the proportionate share of net profits from Timothy's investment nor the cash distributions paid to him should be considered income available for child support purposes, and that the children's share of the Precision Color proceeds should be distributed upon the final sale or redemption of the stock. The

court denied Linda's request for production of financial documents other than Timothy's tax returns and his Financial Disclosure Statement. Linda appeals.

## DISCUSSION

¶ 6.  Linda raises several issues for our review. First, she contends that the circuit court erred when it ruled that Timothy's undistributed investment profits and the cash distributions from Precision Color were not gross income for child support purposes. Next, she argues that Timothy should be obliged to put a percentage of his Precision Color cash distributions into an educational fund for the children. Finally, Linda argues that the court's decision to quash her demand for discovery was error. We take each issue in turn.

■■■■■

¶ 7.  Resolution of whether Timothy's undistributed income from Precision Color should be included in the child support calculation requires us to apply WIS. ADMIN. CODE § DWD 40.02(13)(a)(9) (Dec. 2003).[1] The application of an administrative rule to undisputed facts is a question of law that we review de novo. *Weis v. Weis*, 215 Wis. 2d 135, 138, 572 N.W.2d 123 (Ct. App. 1997). Section DWD 40.02(13) defines "gross income" to include salary and wages, investment income, and "[u]ndistributed income of a corporation, including a closely–held corporation, or any partnership, including a limited or limited liability partnership, *in which the parent has an ownership interest sufficient to individu-*

---

[1] All references to WIS. ADMIN. CODE § DWD 40.02(13) are to the Wisconsin Administrative Register, December 2003, No. 576.

803

*ally exercise control or to access the earnings of the business . . . .*" Sec. DWD 40.02(13)(a)(1), (2) and (9) (emphasis added).

¶ 8. Linda contends that no published Wisconsin case discusses proper treatment of "pass-through profit-based income for child support purposes."[2] We disagree. In *Weis*,[3] we considered whether undistributed partnership profits should be included in the calculation of a payer's child support obligation. *Weis*, 215 Wis. 2d at 141. The facts in *Weis* are sufficiently similar to those presented here, and we comfortably draw the analogy.

¶ 9. In *Weis*, we held that two factors must be considered when undistributed company earnings are at issue. First, the court must ascertain whether the child support payer has the ability to individually control or access the undistributed earnings. *Id.* Second, the court must determine whether there is a valid business reason for the company's decision to retain the earnings. *Id.* at 141–42. If the payer has the ability to individually control or access earnings and the company has no valid reason for retaining its earnings, the

---

[2] Linda directs us to *Grohmann v. Grohmann*, 189 Wis. 2d 532, 525 N.W.2d 261 (1995), where our supreme court held that undistributed income from a valid grantor trust should be used in calculating child support when the support payer is the grantor of the trust. *Id.* at 539. Linda argues that the court's logic in *Grohmann* applies here. However, *Grohmann* did not address undistributed earnings of a business, which is the crux of the issue presented here.

[3] In *Weis v. Weis*, 215 Wis. 2d 135, 141, 572 N.W.2d 123 (Ct. App. 1997), we reviewed the standards for calculating child support obligations under WIS. ADMIN. CODE § HSS 80.02(13)(g). WISCONSIN ADMIN. CODE ch. HSS 80 has since been renumbered ch. DWD 40. Register, July 1999, No. 523, CR. 98–130 (eff. Aug. 1, 1999). The relevant language considered by the *Weis* court has not changed.

undistributed income can be considered when calculating the payer's child support obligation. *Id.* at 142.

¶ 10.  Here the parties agree that Timothy is a minority shareholder, owning a 10% interest in Precision Color. Further, the parties stipulated on the record that John Goeden, who is the majority shareholder of Precision Color, has control of the company and can choose whether or not to make any distribution of earnings to the shareholders. Nonetheless, Linda contends that Timothy is "not . . . constrained from obtaining his proportionate share of the company's reported earnings." She asserts that under the Stock Redemption Agreement entered into by Precision Color shareholders, Timothy has the authority to "liquidate all, or any portion, of his investment, at any time." Linda's argument erroneously equates Timothy's ability to control undistributed earnings with his ability to sell his stock.

¶ 11.  Linda also argues that public policy prohibits a payer from using "financial stratagems" to hide income. That, in fact, is the concern addressed by the second *Weis* condition:   whether the payer is using the company as a "pretext to manipulate income." *Id.* at 141–42. Linda does not explain how Timothy has manipulated his income, given that he has no individual control or access to the undistributed earnings. While we have no dispute with Linda's contention that public policy prohibits sheltering income to avoid child support, she presents no logical connection between Precision Color's undistributed earnings and the goals of this public policy.

¶ 12.  We conclude that Timothy, in his S corporation minority shareholder status, does not have the ability to individually control or access undistributed earnings; therefore, the first *Weis* condition is not met. *See id.* at 141. Because both conditions must be present

for the court to consider undistributed earnings for child support purposes, we need not address the second factor. *See id.* at 142.

■

¶ 13.   Linda next argues that the cash distributed by Precision Color to its shareholders for payment of taxes on the undistributed earnings should be considered income available for child support purposes. Linda fails to set forth any legal authority for her position. She states that the "Trial Court's way of looking at the situation is legally flawed" and calls the court's decision "factually unsound" and "erroneous in several ways." In her reply brief, Linda criticizes Timothy's use of case law from foreign jurisdictions, contending that it is not instructive because she can cite to foreign jurisdictions to support her argument as well.[4] Nonetheless, Linda never develops her position. Propositions unsupported

---

[4] Timothy argues that Precision Color's cash distributions to cover taxes is not income, but rather is a return of his basis and a reduction of his capital in the corporation. Further, Timothy argues that his ability to pay child support is not augmented by the cash distributions, which pay his tax liability from the Precision Color investment. Because the issue presented has not been specifically addressed under Wisconsin law, Timothy offers case law from other states to support his position. *See In re Marriage of Brand,* 44 P.3d 321, 330 (Kan. 2002) (where there was no indication that the payer spouse had manipulated income for purposes of avoiding support obligations and where the payer did not have the ability to control distribution of corporate assets, retained earnings and distributions for tax liability on those earnings need not be considered in support calculation); *Fennell v. Fennell,* 753 A.2d 866, 868 (Pa. Super. Ct. 2000) (the income calculation should reflect the actual available financial resources rather than the often fictional financial portrait produced by federal tax laws); *McHugh v. McHugh,* 702 So. 2d 639, 642 (Fla. Dist. Ct. App. 1997)

by legal authority are inadequate, and we will not consider them. *State v. Shaffer*, 96 Wis. 2d 531, 545, 292 N.W.2d 370 (Ct. App. 1980). Thus, under *Shaffer*, our consideration of Linda's proposition ends here.

■

¶ 14. Linda next argues that the circuit court erred when it held that Timothy was not obligated to set aside money from the cash distributions in an educational trust for future application to the post-high school education expenses of the parties' two children. She points us to the following language in the marital settlement agreement:

> Any and all dividends, distributions or proceeds of sale or redemption of [Precision Color Graphics] stock shall be divided 90% to the petitioner, Timothy J. Winters; 5% to the parties' [first] son . . . and 5% to the parties' [second] son. Said funds awarded to the minor children may be deposited in trust on their behalf, for distribution to them outright at age 24, or for application to payment of tuition and room and board expenses for post-high school education.

■

¶ 15. The circuit court determined that the children would share 10% of the sale proceeds upon final disposition of Timothy's interest in Precision Color stock. This issue requires us to interpret the language of the marital settlement agreement, which is a contract and subject to de novo review. *Taylor v. Taylor*, 2002 WI App 253, ¶ 7, 258 Wis. 2d 290, 653 N.W.2d 524. When the language is unambiguous, we construe the contract as it stands and need not resort to extrinsic evidence to construe its meaning. *Id.* A marital settle-

(rejecting the contention that a cash distribution to a shareholder to pay corporate tax liability should be included in child support calculation).

ment agreement is ambiguous if it is reasonably susceptible to more than one meaning. *Id.*

¶ 16. Linda posits that the phrase "dividends, distributions or proceeds" includes distributions Precision Color made to Timothy to cover his tax liability. Timothy responds that the emphasis should be on the phrase "proceeds of sale or redemption." He argues that "dividends" and "distributions" are terms generally associated with C corporation investors, and that the parties had contemplated a division only upon "sale or redemption" of the stock. We conclude that both interpretations are reasonable and therefore the language is ambiguous as to the terms "dividends, distributions or proceeds of sale or redemption."

¶ 17. For two reasons, we hold that Timothy's interpretation of the language is appropriate. First, we consider the nature of the property at issue. *See Washington v. Washington*, 2000 WI 47, ¶ 29, 234 Wis. 2d 689, 611 N.W.2d 261. Timothy's investment has demonstrated a pattern of growth that was facilitated by cash distributions to pay his tax liability on his Precision Color earnings. We agree with the circuit court's observation that it would serve the children "in the long run to have that investment continue to grow." Second, if the language of the contract is ambiguous, we construe the ambiguity against the drafter. *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶ 15, 234 Wis. 2d 670, 610 N.W.2d 832. Here, Linda's attorney drafted the marital settlement agreement. Accordingly, we hold that the terms of the marital settlement agreement require Timothy to divide the proceeds of his Precision Color stock upon sale or redemption of the shares.

¶ 18. Finally, Linda contends that the circuit court erred when it limited her requests for discovery of

Timothy's financial information to tax returns and his Financial Disclosure Statement. A trial court's decision whether to order discovery is vested in its sound discretion. *Borgwardt v. Redlin,* 196 Wis. 2d 342, 350, 538 N.W.2d 581 (Ct. App. 1995). The burden to demonstrate an erroneous exercise of discretion rests with the appellant. *See Fanshaw v. Medical Protective Ass'n,* 52 Wis. 2d 234, 240, 190 N.W.2d 155 (1971).

¶ 19. WISCONSIN STAT. § 804.01(2)(a) (2003–04) states that a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" as long as "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Linda contends that she pursued financial disclosure on the grounds that Timothy appeared to be "living well beyond his alleged means, as reported in his Financial Disclosure Statement." She argues that the documents sought may explain the "apparent discrepancy" between Timothy's financial disclosure and his life-style.

¶ 20. In her pursuit, Linda sought discovery of almost every conceivable financial document, including, but by no means limited to: cancelled checks, checkbooks, and statements from every bank, credit union, or savings and loan at which Timothy held any interest in an account from 1998 to the present; records of all income received from any source since 1994; an itemization of all cash receipts and cash disbursements since 1994; records of his children's and stepchildren's bank or trust accounts; records of life insurance policies, mortgages or real estate deeds held by him; and the total annual cost of private or parochial schools attended by his stepchildren. The circuit court observed that the issues at hand were limited to Timothy's Precision Color earnings and that all but a few of the

requests were irrelevant and not reasonably calculated to lead to discoverable information. Upon our review of the record facts, the issues as framed by Linda, the confines of Wisconsin's discovery statute, and the circuit court's reasoning, we find no error in the court's holding.

## CONCLUSION

¶ 21.   We conclude that Timothy does not have the ability to individually control or access Precision Color's undistributed earnings; therefore, the circuit court did not err when it refused to consider undistributed earnings for child support purposes. *See Weis*, 215 Wis. 2d at 141–42. Moreover, Precision Color's cash distributions to Timothy were made to allow him to pay his tax liability on the Precision Color net earnings and were appropriately excluded from the child support calculation. We further conclude that the terms of the marital settlement agreement award the children 10% (split evenly) of the proceeds upon Timothy's sale or redemption of his Precision Color stock. Finally, we conclude that Linda's request for discovery exceeded the bounds of that information reasonably calculated to lead to admissible evidence and the circuit court properly denied the request as to all irrelevant documents.

*By the Court.*—Order affirmed.