PARK MANOR, LTD., Petitioner-Respondent,†

v.

STATE of Wisconsin DEPARTMENT OF HEALTH AND FAMILY SERVICES, Respondent-Appellant,

DIVISION OF HEARINGS AND APPEALS, Respondent.

Court of Appeals

*No. 2006AP2311. Submitted on briefs May 29, 2007.
—Decided June 26, 2007.*

2007 WI App 176

(Also reported in 737 N.W.2d 88.)

† Petition to review denied 10/10/07.

512

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Peggy A. Lautenschlager* and *J.B. Van Hollen*, attorneys general and *Maureen McGlynnn Flanagan*, assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Robert M. Hesslink, Jr.* of *Hesslink Law Offices, S.C.*, Verona.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. This case is a dispute over whether Park Manor, Ltd., is entitled to Medicaid

reimbursement for legal fees it incurred in state and federal litigation. The Wisconsin Department of Health and Family Services concluded Park Manor is entitled to only partial reimbursement of fees from the state litigation and no reimbursement of fees from the federal litigation. The circuit court ordered full reimbursement of the state fees and remanded the federal fees issue to the Department for further consideration. We conclude the Department correctly determined Park Manor's reimbursement entitlement and reverse the order.

## BACKGROUND

¶ 2. Park Manor is a licensed long term care facility in Park Falls, Wisconsin. It participates as a provider in the Wisconsin Medicaid Program. In 2001, Park Manor was cited for twenty-eight federal deficiencies and seven state deficiencies as a result of an annual inspection or "survey." Ultimately, both the Department and the federal government brought administrative proceedings against Park Manor based on the alleged deficiencies. Park Manor prevailed in both proceedings. At the conclusion of the state proceeding, Park Manor moved for an order permitting its attorney fees to be included as allowable costs for purposes of Medicaid reimbursement. The administrative law judge awarded slightly less than $186,000 in fees and costs subject to certain restrictions. Park Manor also moved for fee reimbursement in the federal proceeding under the federal Equal Access to Justice Act (EAJA) but received only $6,866, a small fraction of its fees.

¶ 3. To understand the dispute here, some background on Medicaid reimbursement is necessary. Medicaid reimbursement is governed by the WISCONSIN MEDICAID PROGRAM, DEP'T OF HEALTH & FAMILY SERVICES,

*Methods of Implementation for Wisconsin Medicaid Nursing Home Payment Rates* (the *"Methods"*).[1] The *Methods* uses a formula to calculate a daily reimbursement rate specific to each Wisconsin nursing home. The daily reimbursement rate is the amount the nursing home receives per resident for each day the resident spends there.

¶ 4. Park Manor's reimbursement rate changes annually on July 1. Expenses incurred during the previous calendar year are used as a starting point in calculating the rate. So, Park Manor's expenses during calendar year 2001 determined its reimbursement rate from July 1, 2002 through June 30, 2003. *See Methods, supra,* § 1.130 (2002–03). Its expenses during calendar year 2002 determined its reimbursement rate from July 1, 2003 through June 30, 2004. *See Methods, supra,* § 1.130 (2003–04).

¶ 5. In addition to changes in expenses, Park Manor's new July 1 reimbursement rates are also determined by changes to the *Methods.* Each October, the State of Wisconsin, in cooperation with the federal government, revises the *Methods,* which can include changes to the formula used to calculate the daily reimbursement rate. This change takes place in the October following the July 1 effective date of the rates. So, Park Manor's 2002–03 daily reimbursement rate was set in October 2002. Its 2003–04 daily reimbursement rate was set in October 2003.

¶ 6. During the relevant periods here, the *Methods* formula calculated the daily reimbursement rate by breaking down expenses into seven categories called

---

[1] All *Methods* provisions cited in this opinion are the same in the 2001–02, the 2002–03, and the 2003–04 versions unless otherwise noted.

cost centers. The expenses for each cost center were capped at a set maximum. The daily reimbursement rate was set based on the total allowable expenses from all cost centers. Expenses within any cost center that exceeded the set maximum were not allowable costs for purposes of the reimbursement rate, and therefore essentially were not reimbursed.

¶ 7. The majority of Park Manor's $186,000 state legal fees were incurred during the 2001 calendar year. When the Department calculated Park Manor's 2002–03 reimbursement rate, the large 2001 legal fees pushed Park Manor's expenses in the "Administrative and General" cost center well beyond its set maximum. This meant the 2002–03 reimbursement rate was not adequate to cover most of Park Manor's 2001 legal fees.

¶ 8. Park Manor's 2002 state legal fees were small enough to be reimbursed in full in the 2003–04 reimbursement rate. However, the Department refused to adjust Park Manor's 2003–04 reimbursement rate to include the 2002 federal legal fees. Ultimately, Park Manor was reimbursed by Medicaid for just over $44,000 of its $186,000 state fees and none of its federal fees.

¶ 9. Park Manor initiated administrative proceedings to challenge the Department's reimbursement rate calculations for 2002–03 and 2003–04. The proceedings were eventually consolidated and heard by the Division of Hearings and Appeals. On August 25, 2005, the Division concluded the Department's reimbursement rate calculations were correct. The Department adopted the Division's proposed decision as its final order in the case.

¶ 10. Park Manor petitioned the circuit court to review the Department's order. The circuit court concluded Park Manor was entitled to reimbursement for

all of its state fees and ordered the Department to adjust its reimbursement rate accordingly. The court also ordered the Department to consider on remand whether Park Manor's federal fees were allowable under the *Methods*.

## DISCUSSION

¶ 11. Because the circuit court was reviewing an administrative agency's decision, we review the agency's decision, not the circuit court's decision. *See Bar-Av v. Psychology Exam. Bd.*, 2007 WI App 21, ¶ 5, 299 Wis. 2d 387, 728 N.W.2d 722. Generally, the meaning of statutes and administrative rules is a question of law reviewed without deference to the circuit court. *LaCount v. General Cas. Co.*, 2006 WI 14, ¶ 20, 288 Wis. 2d 358, 709 N.W.2d 418; *Winters v. Winters*, 2005 WI App 94, ¶ 7, 281 Wis. 2d 798, 699 N.W.2d 229.

¶ 12. Both statutes and rules are interpreted using the same methodology. *State v. Busch*, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998). We begin with the language of the statute or rule. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. That language is given its common, ordinary, and accepted meaning. *Id.* We interpret language in the context in which it is used, in relation to the language of surrounding or closely related statutes or rules, and in a way that avoids absurd results. *See id.*, ¶ 46. We also consider the purpose of the statute or rule so far as its purpose is shown in the text and structure of the statute itself. *Id.*, ¶ 48.

519

¶ 13. The meaning of an order is also a question of law. *See City of Wisconsin Dells v. Dells Fireworks, Inc.*, 197 Wis. 2d 1, 23, 539 N.W.2d 916 (Ct. App. 1995). We interpret an order in the same way we interpret a contract; that is, we construe the language of the order as it stands, attempting to give meaning to every provision. *See Isermann v. MBL Life Assur. Corp.*, 231 Wis. 2d 136, 153, 605 N.W.2d 210 (Ct. App. 1999).

¶ 14. The parties disagree over whether the Department's interpretations of the *Methods* and the ALJ's fee order are entitled to deference. We conclude the Department's interpretations are correct even if they are not entitled to deference, and therefore need not decide whether deference is required. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (court of appeals decides cases on the narrowest possible grounds).

### I. The 2001 State Fees

¶ 15. The dispute over the 2001 state fees is principally a debate over the meaning of the ALJ's order awarding fees to Park Manor. That order provided:

> Park Manor, as the prevailing party, has submitted a motion, pursuant to sec. 1.2455 of the [*Methods*], for an order requiring [the Department] to permit the inclusion [of Park Manor's fees in its 2001 and 2002 cost reports] and ultimate payment according to the [*Methods*]. The Department . . . did not generally oppose the motion, but did indicate an objection to any payment of fees not in accordance with the [*Methods*].
>
> . . . .
>
> IT IS HEREBY ORDERED that Park Manor is

awarded attorney's fees and costs incurred in this proceeding in the amount of $185,837.88. The award shall be handled in the manner described at sec. 1.2455 of the Methods. The Department shall include[2] the Administrative and General cost centers in Park Manor's Medicaid cost reports for the fiscal years 2001 and 2002 by the amounts reflecting the costs and disbursements incurred in each such year.

IT IS FURTHER ORDERED that all nursing home rates in any rate years which have been, or will be, affected by the above adjustments to the cost reports be adjusted as provided in the Methods for the applicable years, and that any amounts owing to Park Manor as a result of such rate adjustments be included in the daily rate as set by the Department in the usual manner.

IT IS FURTHER ORDERED that, in the event that the [Methods] are amended in the future in such a manner that the above method of reimbursement is not feasible under the cost or rate calculations then existing, that such equivalent allowances in Park Manor's costs or rates shall be made by the Department so that Park Manor will be made whole for such fees and costs, so long as the Department is not forbidden from making such adjustments by the [Methods] then in effect.

The ALJ's order was issued July 12, 2002. The 2002–03 daily reimbursement rates that would be adjusted to pay the 2001 legal fees were not yet known when the order was issued.

---

[2] The term "include" in this sentence appears to be a grammatical error. Read literally, this sentence requires the Department to "include" the cost centers, not the legal fees, in Park Manor's cost reports. The preceding sentence's reference to *Methods* § 1.2455 makes clear this sentence requires the Department to include the $185,837 in legal fees in the applicable years' cost reports.

¶ 16. Park Manor contends it would have recovered substantially more under the 2001–02 rates than it did under the new 2002–03 rates.[3] According to Park Manor, the change made "the above method of reimbursement . . . not feasible" and triggered the third paragraph of the order requiring Park Manor to be made whole by other means. The Department contends the order only requires that it treat the legal fees as an allowable expense subject to the cost center caps in the *Methods*. We agree with the Department, for two reasons.

¶ 17. First, the order repeatedly refers to reimbursement according to the terms of the *Methods*. The introductory paragraph notes the Department's objection to any award outside the *Methods*. The first order paragraph states that the award "shall be handled under" *Methods* § 1.2455, which states that:

> [T]he amount awarded will be treated as an allowable expense . . . to the extent the amount does not exceed the Administrative and General cost center maximum limitation . . . .

The second order paragraph also mirrors the procedure in § 1.2455, ordering that "all nursing home rates . . . be adjusted as provided in the *Methods* for the applicable years," and requiring the fees to "be included in the daily rate as set by the Department in the usual

---

[3] This was a disputed issue in the administrative hearing. The Department's auditor testified Park Manor actually received more reimbursement under the 2002–03 *Methods* than it would have under the 2001–02 version. Park Manor argued it would have been reimbursed for approximately $95,000, or slightly over half of its fees, under the 2001–02 *Methods*, but received only about $44,000 under the 2002–03 *Methods*.

manner." The third order paragraph requires the Department to adjust rates only if, among other things, "the Department is not forbidden from making such adjustments by the [*Methods*] then in effect." All of this language indicates the ALJ ordered reimbursement under the terms of the *Methods*.

¶ 18. Second, the plain language of the third order paragraph supports the Department's interpretation. The third order paragraph only applies if "the [*Methods*] are amended in the future in such a manner that the above method of reimbursement is not feasible . . . ." The phrase "above method of reimbursement" refers to the first two order paragraphs, which require the procedure found in *Methods* § 1.2455. Section 1.2455 allowed attorney fees to be counted as an allowable cost in the Administrative and General cost center, subject to the set maximum for that cost center.

¶ 19. The third order paragraph, then, applied only if the *Methods* were changed in such a way that attorney fees could not be included as an allowable expense under the Administrative and General cost center. Here, although apparently the exact amount of attorney fees allowed in the Administrative and General cost center did change somewhat from 2001–02 to 2002–03, the "method of reimbursement"—including fees as a reimbursable Administrative and General cost, subject to the set maximum for that cost center— remained the same.

¶ 20. Park Manor argues the third order paragraph was meant to apply if the *Methods* were changed in such a way that full reimbursement was "not feasible."[4] However, the order refers to whether the

---

[4] Park Manor also argues the Department conceded there was a "substantial change" in the *Methods* in its original

"method of reimbursement" is not feasible. "Full reimbursement" is not the same thing as a "method of reimbursement." Park Manor has never argued it would have been entitled to full reimbursement under the 2001–02 *Methods*. In fact, the 2001–02 *Methods* expressly state that an award of attorney fees is an allowable expense in the Administrative and General cost center subject to the set maximum for that cost center. *See Methods, supra,* § 1.2455. In view of those facts, the order's reference to the "method of reimbursement" in the 2001–02 *Methods* cannot be read as requiring full reimbursement.[5]

¶ 21. Finally, Park Manor argues the order requires Park Manor to be "made whole" if feasible, and the Department must do so because it has the authority to increase rates to reimburse Park Manor in full. We disagree.

decision in this case. The Department's alleged concession, however, is nothing more than (1) its choice to resolve the case on slightly different grounds; (2) its admission that the *Methods* changed from year to year; and (3) its admission that the fees caused the 2002–03 Administrative and General cost center to exceed the maximum. Nowhere did the Department concede that applying *Methods* § 1.2455 was "not feasible" because of changes to the *Methods*.

[5] Park Manor argues the Department is judicially estopped from taking a contrary position to the position it allegedly took when it did not object to the ALJ's order. However, because the order in fact adopts the Department's position, the Department never adopted a position contrary to the position it is taking in this appeal. Judicial estoppel therefore does not apply. *See Van Deurzen v. Yamaha Motor Corp. USA,* 2004 WI App 194, ¶ 5, 276 Wis. 2d 815, 688 N.W.2d 777 (judicial estoppel can be invoked only against a party who convinces the court to adopt a contrary position).

¶ 22. First, Park Manor's argument misreads the order. The order required Park Manor to be "made whole" to the extent "not prohibited" by the *Methods* only if the "method of reimbursement" found in *Methods* § 1.2455 was "not feasible." As noted above, § 1.2455 was in fact used to calculate Park Manor's reimbursement entitlement.

¶ 23. Second, Park Manor misreads *Methods* § 1.120 and WIS. STAT. § 49.45(6m).[6] WISCONSIN STAT. § 49.45(6m) regulates Medicaid payments and gives the Department the authority to promulgate the *Methods*. *See* WIS. STAT. § 49.45(6m)(a)5, (ag). WISCONSIN STAT. § 49.45(6m)(e) requires the Department to

> establish an appeals mechanism within the department to review petitions . . . for modifications to any payment under this subsection. The [D]epartment may, upon the presentation of facts, modify a payment if demonstrated substantial inequities exist for the period appealed.

¶ 24. This appeals mechanism is found in *Methods* § 1.120:

> One provision in these *Methods* helps assure that necessary and appropriate care continues to be provided by facilities which may not be economically and efficiently operated and which face unique fiscal circumstances. The Nursing Home Appeals Board helps ensure cost-effective operations and yet recognize exceptional circumstances, if warranted.
>
> The Nursing Home Appeals Board is available for redress in the event a facility has extraordinary fiscal circumstances, as defined by [WIS. STAT. §] 49.45(6m)(e) . . . .

---

[6] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

¶ 25. This is the only avenue in the *Methods* by which a nursing home can obtain an exception to the normal reimbursement rates.[7] The Department therefore does not have the authority under the *Methods* to grant Park Manor an increased reimbursement rate absent Appeals Board approval.

¶ 26. Park Manor argues *Methods* § 1.110 gives the Department the authority to make rate increases on its own. Park Manor relies on language in § 1.110 stating that policies and procedures used to implement the *Methods* are "not necessarily applicable to special situations." This language, however, is entirely consistent with *Methods* §§ 1.120 and 1.400. Read together, these sections simply allow rate increases due to "special situations" to be governed by the Appeals Board under *Methods* § 1.120, while all other expenditures are governed by the usual provisions of the *Methods*.

¶ 27. Park Manor also argues the Department has given rate increases not authorized by the *Methods* on its own in other instances, and this indicates the Department in fact has the authority to increase Park Manor's reimbursement rate without Appeals Board approval. However, Park Manor fails to develop any argument explaining why we should defer to the Department in this regard or what level of deference it

---

[7] Park Manor applied to the Appeals Board for an exception to the usual rates. The record does not contain any indication of how Park Manor's application was resolved. We assume the Appeals Board did not grant a modification; however, Park Manor does not contend that any adverse Appeals Board decision is at issue in this appeal.

believes the Department is due.[8] To the extent that Park Manor is arguing we should defer to the Department's past positions on this issue, we note that inconsistent past agency positions are a reason not to defer to the agency. See *DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 18, 299 Wis. 2d 1, 727 N.W.2d 311.

## II. The 2002 Federal Fees

¶ 28. The parties next dispute whether the Department correctly concluded Park Manor's 2002 fees from the federal proceeding are not reimbursable under the *Methods*. *Methods* § 1.245 sets out rules governing when legal fees "are not related to patient care" and therefore not allowable costs. Fees are not allowable costs, for example, when they are related to a reimbursement action or used to defend an owner or employee of the provider. They also are not allowable costs when they are related to a state administrative proceeding, except in limited instances. Finally, § 1.245 contains a catch-all provision stating that "other fees not related to patient care" are not allowable costs.

¶ 29. *Methods* § 1.245 does not specifically mention fees from federal administrative proceedings. Park Manor argues federal fees are therefore allowable costs. The Department argues fees from federal administra-

---

[8] Park Manor relies primarily on *Olin Corp. v. EPA*, 370 N.E.2d 3, 6–7 (Ill. App. 1977), for the proposition that "informal administrative practices" are relevant to the meaning of a rule. However, the Illinois court in *Olin Corp.* ultimately refused to defer to the EPA's interpretation of the rule in question because the EPA's "informal administrative practices" were inconsistent. *See id.* In addition, it is important to note that Illinois does not have the same three levels of deference to agency decisions in Wisconsin. *Compare Olin Corp. with DaimlerChrysler v. LIRC*, 2007 WI 15, ¶ 18, 299 Wis. 2d 1, 727 N.W.2d 311.

tive proceedings are substantially similar to fees from state administrative proceedings, and therefore are "other fees not related to patient care." We agree with the Department.

¶ 30. Fees incurred defending a state administrative proceeding are not allowable costs unless "the administrative law judge in the administrative appeal awards fees in a motion brought under [*Methods* §] 1.2455." *Methods, supra,* § 1.245. Section 1.2455 states that:

> Upon resolution of any [administrative appeal], the provider or the state agency may submit a motion for award of fees to the administrative law judge. The judge shall award fees if the judge determines that the moving party is the "prevailing party," unless the judge determines that the other party had a reasonable basis in law and fact for taking its position or that special circumstances exist that would make an award unjust.

¶ 31. Under *Methods* § 1.2455, then, state fees are allowable costs only in limited instances. They are not allowable costs, for instance, where the nursing home lost on the merits, or where "special circumstances" make an award unjust. *Methods* §§ 1.245, 1.2455. Under Park Manor's interpretation, however, reimbursement of federal fees would not be subject to any of these limits. Federal fees would be reimbursable even if expended in a losing cause, and in cases where "special circumstances" would make an award unjust. We see no reason why federal fees would be nearly universally reimbursable while state fees are not.

¶ 32. In addition, state fees are allowable costs only where the Department has no "reasonable basis in law and fact" for the state action. *Methods, supra,* §§ 1.245, 1.2455. In effect, then, the Department must

only reimburse costs attributable to fault on its part. Park Manor's interpretation of the *Methods,* however, would require nearly universal reimbursement of federal fees even though the Department has no control over federal agencies' actions. We fail to see why the *Methods* would limit reimbursement in state proceedings to cases where the Department is at fault, but require reimbursement in an entire class of cases where the Department by definition cannot be at fault.

¶ 33. This conclusion harmonizes the *Methods* with the federal statute governing fee recovery in federal administrative proceedings, the Equal Access to Justice Act (EAJA). When the legislature enacts legislation, it is presumed to act with knowledge of existing statutes. *Abbas v. Palmersheim,* 2004 WI App 126, ¶ 26, 275 Wis. 2d 311, 685 N.W.2d 546. We similarly presume that the *Methods* were created with full knowledge of the EAJA. Under the EAJA, fees incurred defending a federal agency adjudication are recoverable unless "the position of the agency was substantially justified or . . . special circumstances make an award unjust." 5 U.S.C.A. § 504(a)(1) (2007). This language parallels the *Methods* rule for state fees, which allows Medicaid reimbursement only if the Department has no "reasonable basis in law and fact" for the state action. *Methods, supra,* § 1.2455.

¶ 34. Taken together, then, the *Methods* and EAJA create a comprehensive system that allows reimbursement of both federal and state legal fees through parallel mechanisms. State fees are recoverable through increased Medicaid reimbursement rates, and federal fees are recoverable through EAJA reimbursement. Under both mechanisms, reimbursement is avail-

able only: (1) when the fees are attributable to fault by the agency bringing the action; and (2) by applying to the agency at fault for reimbursement at the close of the underlying administrative proceeding. *See Methods, supra,* §§ 1.245, 1.2455; *see also* 5 U.S.C.A. § 504(a)(1)-(2) (2007). The only reasonable interpretation of *Methods* § 1.245, in view of this comprehensive system, is that the federal legal fees are "other fees not related to patient care" and are to be reimbursed, if at all, through the EAJA and not through Medicaid.[9]

*By the Court.*—Order reversed.

---

[9] Indeed, the EAJA has fewer restrictions on fee recovery than *Methods* § 1.245. Unlike the *Methods,* the EAJA does not place a cap on allowable fees. *See* 5 U.S.C.A. § 504(a) (2007). In addition, an EAJA fee award is not paid by Medicaid and so will not impact the nursing home's ability to receive Medicaid efficiency incentives.