DAIMLERCHRYSLER c/o ESIS, Plaintiff-Appellant,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION
and Glenn May, Defendants-Respondents.

Supreme Court

*No. 2005AP544. Oral argument September 13, 2006.
—Decided February 2, 2007.*

2007 WI 15

(Also reported in 727 N.W.2d 311.)

---

† Motion for Reconsideration denied 3/30/07. Order modifies ¶ 39, n. 17. See PDC 2007 WI 40.

---

3

For the plaintiffs-appellants there were briefs by *Thomas M. Rohe* and *Otjen, Van Ert & Weir, SC,* Milwaukee, and oral argument by *Thomas M. Rohe.*

For the defendant-respondent Labor and Industry Review Commission there was a brief and oral argument by *Jeffrey J. Shampo,* Madison.

For the defendant-respondent Glenn May there was a brief by *Richard A. Fortune* and *Fortune & McGillis, S.C.,* Racine, and oral argument by *Richard A. Fortune.*

¶ 1. N. PATRICK CROOKS, J. This case is before this court on certification from the court of appeals pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).[1] DaimlerChrysler appeals an order of the Circuit Court for Kenosha County, Honorable Wilbur W. Warren, Judge, affirming a worker's compensation decision of the Wisconsin Labor and Industry Review Commission (the LIRC). The LIRC determined that the defendant-respondent, Glenn May (May), was entitled to a minimum of 10 percent disability for each of two anterior cruciate ligament (ACL) repairs pursuant to Wis. Ad-

---

[1] Wisconsin Stat. § (Rule) 809.61 provides in relevant part: "The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion."

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

min. Code § DWD 80.32(4) (Sept., 2005)[2], resulting in a 20 percent permanent partial disability (PPD) award.

¶ 2. We conclude that the LIRC's interpretations of Wis. Admin. Code § DWD 80.32(4) and Wis. Stat. § 102.18(1)(d) are entitled to controlling deference and great weight deference, respectively, and that the LIRC's award of 20 percent permanent partial disability to May should be upheld.

¶ 3. The certified question before this court is whether the LIRC may interpret Wis. Admin. Code § DWD 80.32(4) to award a cumulative minimum PPD for multiple ligament repair procedures, where the resulting award is higher than the highest medical estimate of PPD in evidence. We answer this question in the affirmative. We hold that § DWD 80.32(4) may be interpreted to award a cumulative minimum PPD for multiple ligament repair procedures, even though the award by the LIRC is higher than the highest medical estimate in the record. We further hold that Wis. Stat. § 102.18(1)(d) does not prohibit determinations in excess of the highest medical assessment in evidence, but rather creates a presumption of reasonableness for PPD awards that fall within the prescribed range. We therefore affirm the decision of the circuit court which affirmed the LIRC's award of 20 percent PPD to May.

I

¶ 4. On April 19, 1999, May, an employee of DaimlerChrysler, was injured at work when an engine that he was carrying hit his left knee. The next day, May went to see Dr. Aftab Ansari, an orthopedic surgeon. May underwent ACL reconstruction surgery by Dr.

[2] All references to the Wisconsin Administrative Code are to the September 2005 register date unless otherwise noted.

Ansari on May 5, 1999. May continued to experience swelling, pain, and stiffness after the surgery. On April 24, 2001, Dr. Ansari examined May and noted atrophy to his left quadriceps. At that time, Dr. Ansari assessed 15 percent PPD of May's left knee.

¶ 5. On July 27, 2001, Dr. Ansari performed a second ACL reconstruction surgery. The second surgery improved May's knee substantially, and he returned to work in October 2001 without further problems. In April 2002 Dr. Ansari was given a copy of Wis. Admin. Code § DWD 80.32(4) and assessed the minimum 10 percent PPD of May's left knee. Doctor Ansari reported that May had reached a healing plateau, and further indicated that May's PPD had not changed due to the second ACL reconstruction. DaimlerChrysler paid May 10 percent PPD, which amounted to $7,820. May then filed a claim for additional compensation with the Department of Workforce Development (the DWD). Administrative Law Judge (ALJ) Sherman Mitchell awarded May 25 percent PPD, the amount determined by adding together Dr. Ansari's assessments from each of the two surgeries.

¶ 6. In reaching his conclusion, the ALJ applied *Hellendrung v. Wal Mart,* Claim No. 1999039147 (LIRC Feb. 23, 2001). In *Hellendrung,* the LIRC ruled that the note to Wis. Admin. Code § DWD 80.32(1) indicates that the same principles that are applied to surgical procedures to the back, also apply to surgical procedures to the knee, and that additional ratings and permanent disability will be given for cumulative surgeries. *Id.*

¶ 7. The worker's compensation applicant in *Hellendrung* had a long-standing history of knee problems prior to being injured at work. Following his work injury, the applicant sought treatment and underwent

11

partial meniscectomy surgery. *Id.* The applicant's treating physician concluded that there was a causal relationship between the applicant's need for surgery and the work incident. *Id.* The ALJ awarded the applicant an additional 5 percent PPD of the knee. The employer argued in its petition to the LIRC for commission review that the language of Wis. Admin. Code § DWD 80.32(1) assumes that the member was previously without disability, and that appropriate reduction should have been made for any preexisting disability. However, the LIRC affirmed the ALJ and concluded in *Hellendrung* that a footnote to § DWD 80.32(1) indicates that the same principle that is applied to an award for surgical procedures to the back is also applied in the case of procedures to the knee. *Id.* The LIRC concluded that § DWD 80.32(11) clearly contemplates that additional ratings and permanent disability will be given for cumulative surgeries to the back, and likewise to the knee, and that a reduction for any preexisting disability is most appropriately applied to previous losses of range of motion and amputations, but not to the surgical procedures listed in § DWD 80.32. *Id.*

¶ 8. In the present case, DaimlerChrysler petitioned the LIRC for review, alleging error by the ALJ. The LIRC affirmed in part and reversed in part, reaffirming its decision in *Hellendrung,* and concluding that the evidence did not establish that May was entitled to 25 percent PPD because Dr. Ansari stated, after the second ACL surgery, that May had regained full strength in his knee and had 10 percent PPD. The LIRC assessed 20 percent PPD to the knee, concluding that Wis. Admin. Code § DWD 80.32 provides a 10 percent minimum for an ACL reconstruction and that, because May underwent two ACL surgeries, he was entitled to a minimum 10 percent recovery for each knee surgery.

¶ 9. DaimlerChrysler then brought an action for judicial review under Wis. Stat. § 102.23. The Kenosha County Circuit Court, Judge Wilbur W. Warren, affirmed the LIRC's decision. DaimlerChrysler appealed, the court of appeals certified the matter to this court, and we accepted the certification.

## II

¶ 10. Our analysis in this case focuses on the standard of review. In order to answer the certified question in this case, it is necessary for this court to interpret both an administrative rule, Wis. Admin. Code § DWD 80.32, especially Wis. Admin. Code § DWD 80.32(4), and a statute, Wis. Stat. § 102.18(1)(d). The application of an administrative rule and the application of a statute to undisputed facts are questions of law that we review de novo.[3] Garcia v. Mazda Motor of Am., Inc., 2004 WI 93, 7, 273 Wis. 2d 612, 682 N.W.2d 365; *Winters v. Winters,* 2005 WI App 94, ¶ 7, 281 Wis. 2d 798, 699 N.W.2d 229. Further, when interpreting administrative regulations, we use the same rules of interpretation as we apply to statutes. *State v. Busch,* 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998)(citations omitted). When an administrative agency promulgates regulations pursuant to a power delegated by the legislature, we construe those regulations "together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason." *Id.*

¶ 11. Here, we review the decision of the LIRC. *Brauneis v. LIRC,* 2000 WI 69, ¶ 14, 236 Wis. 2d 27,

---

[3] The parties do not dispute the facts in this case.

13

612 N.W.2d 635. An administrative agency's interpretation of its own rules or regulations is controlling unless "plainly erroneous or inconsistent with the regulations." *Busch,* 217 Wis. 2d at 441 (citations omitted); *see also RTE Corp. v. DILHR,* 88 Wis. 2d 283, 290, 276 N.W.2d 290 (1979). Here, the LIRC reviewed a rule promulgated by the DWD, not the LIRC's own rule. The LIRC is an adjudicative body charged only with resolving certain disputes. *Racine Harley-Davidson, Inc. v. State of Wis. Div. of Hearings and Appeals,* 2006 WI 86, ¶ 35, 292 Wis. 2d 549, 717 N.W.2d 184. The LIRC is an independent agency of the State of Wisconsin and, although it is not an organizational subdivision of the DWD, it is " 'attached' " to the DWD for administrative purposes only.[4] The LIRC does not make rules, except for rules governing its own procedures. Wis. Stat. § 103.04(2).

¶ 12. The LIRC was created for the purpose of reviewing claims issued by ALJs in three divisions of the DWD: Unemployment Insurance, Worker's Compensation, and Equal Rights.[5] Pursuant to Wis. Stat. § 102.18(2)[6], the DWD maintains on its staff ALJs to hear and decide disputed claims. When decisions of ALJs are appealed in each of the three DWD divisions, the LIRC reviews the evidence submitted at the hearing, considers the parties' arguments, consults with the

---

[4] A Brief History of LIRC, http://www.dwd.state.wi.us/lirc/lrc_about.htm (2006)

[5] *Id.*

[6] Wisconsin Stat. § 102.18(2) provides in relevant part, "The department shall have and maintain on its staff such examiners as are necessary to hear and decide disputed claims and to assist in the effective administration of this chapter. These examiners shall be attorneys and may be designated as administrative law judges."

ALJs if necessary, and then issues a written decision.[7] The LIRC was charged by the legislature with the duty of reviewing the evidence and affirming, reversing, setting aside, or modifying those findings or orders, in whole or in part. Wis. Stat. § 102.18(3).

¶ 13. We conclude that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32(4) is entitled to controlling weight deference, because the LIRC reasonably interpreted a rule adopted by the DWD, the LIRC's interpretation was not inconsistent with the language of the rule or clearly erroneous, and the LIRC was charged by the legislature with the duty of reviewing decisions issued by ALJs in the Worker's Compensation Division of the DWD, and does so frequently. Wis. Stat. § 102.18(3). *See also RTE Corp.,* 88 Wis. 2d at 290.

¶ 14. Case law supports our decision to grant controlling deference to the LIRC in this case. In *City of Elroy v. LIRC,* 152 Wis. 2d 320, 324, 448 N.W.2d 438 (Ct. App. 1989), the court of appeals gave controlling weight deference to the LIRC's interpretation of a worker's compensation rule promulgated by the Industrial Commission[8] under section Ind. 80.30 of the Wisconsin Administrative Code, since the interpretation was not inconsistent with the language of the rule or clearly erroneous. The court of appeals determined

---

[7] A Brief History of LIRC, http://www.dwd.state.wi.us/lirc/lrc_about.htm (2006)

[8] The Industrial Commission was a predecessor agency to the DWD. In 1967, The Department of Industry, Labor, & Human Relations (the DILHR) was created from the former Industrial Commission. In 1996, the DWD replaced the DILHR as part of a major departmental reorganization. *See* DWD History, http://www.dwd.state.wi.us/dwd/DWDHistory/default.htm (2006).

that the LIRC's conclusion was reasonable, and affirmed the LIRC's decision. *Id.* Similarly, in *Hutchinson v. Custom Drywall, Inc.,* the court of appeals concluded that the LIRC's interpretation of Wis. Admin. Code § DWD 80.24 was entitled to controlling weight deference, because it was not inconsistent with the rule or clearly erroneous. *Hutchinson v. Custom Drywall, Inc.,* No. 1997AP1675, unpublished slip op. (Wis. Ct. App. September 3, 1998)[9].

¶ 15. Although the interpretation of a regulation and the interpretation of a statute are both questions of law, we determine the level of deference for agency statutory interpretations in a different manner. *Hillhaven,* 2000 WI App 20, ¶ 12 n.6, 232 Wis. 2d 400, 606 N.W.2d 572. An agency's statutory interpretations are generally accorded one of three levels of deference: great weight, due weight, or no deference. *Id.* However, for an agency's interpretation of its own rules or regulations, if the interpretation is reasonable and consistent with the intended purpose, we generally apply either "controlling weight" or "great weight" deference. *Marder v. Bd. of Regents of the Univ. of Wis. Sys.,* 2004 WI App 177, ¶ 27 n.3, 276 Wis. 2d 186, 687 N.W.2d 832 (citing *Hillhaven,* 232 Wis. 2d 400, ¶ 12 n.6). However, "[d]espite the difference in terminology, the deference we give to an agency interpretation of its own rules is similar to the great weight standard applied to statutory interpretations." *Marder,* 276 Wis. 2d 186, ¶ 27 n.3. Both great weight deference and controlling weight deference "turn on whether the agency's interpretation

---

[9] We include an unpublished decision merely to show that controlling weight deference is regularly given to the LIRC's interpretation of the DWD's administrative rules.

is reasonable and consistent with the meaning or purpose of the regulation or statute." *Id.*

¶ 16. In order for an agency's interpretation of a statute to be accorded great weight deference, four requirements must be met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *Lisney v. LIRC,* 171 Wis. 2d 499, 505, 493 N.W.2d 14 (1992); *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 284, 548 N.W.2d 57 (1996). Under the standard of great weight deference, a court will refrain from substituting its view of the law for that of an agency charged with administration of the law, and will sustain the agency's conclusions of law if they are reasonable. *Brown v. LIRC,* 2003 WI 142, ¶ 19, 267 Wis. 2d 31, 671 N.W.2d 279. We will sustain an agency's conclusions of law even if an alternative view of the law is just as reasonable or even more reasonable. *Id.*

¶ 17. Due weight deference is appropriate when an agency has some experience in an area, but has not yet developed the expertise that would place it in a better position than a court to make judgments regarding the interpretation of the statute. *UFE Inc.,* 201 Wis. 2d at 286. When applying due weight deference, we will not overturn a reasonable agency interpretation that is consistent with the purpose of the statute, unless there is a more reasonable interpretation. *Hillhaven,* 232 Wis. 2d 400, ¶ 12 n.6.

¶ 18. De novo review or no deference is appropriate where the issue is one of first impression, where the agency has no special expertise, or where the agency's position has been so inconsistent that it provides no real guidance. *Am. Mfrs. Mut. Ins. Co. v. Hernandez,* 2002 WI App 76, ¶ 14, 252 Wis. 2d 155, 642 N.W.2d 584.

¶ 19. The circuit court gave the LIRC's interpretation of Wis. Admin. Code § DWD 80.32 due deference, and noted that the court found no guidance in Wis. Stat. § 102.18(1)(d). For the following reasons, we conclude that the LIRC's interpretation of § 102.18(1)(d) is entitled to great weight deference, and that the LIRC's interpretation of § DWD 80.32(4) is entitled to controlling weight deference. As noted previously, controlling weight deference is similar to great weight deference, despite the difference in terminology, because both standards turn on whether the agency's interpretation is reasonable and consistent with the meaning or purpose of the regulation or statute. *Marder,* 276 Wis. 2d 186, ¶ 27 n.3. Controlling weight describes a level of deference given to an agency's interpretation and application of administrative rules and regulations, while great weight deference describes a level of deference given to an agency's interpretation and application of a statute.

¶ 20. The legislature empowered the DWD and the LIRC to administer the worker's compensation statutes. *Beecher v. LIRC,* 2004 WI 88, ¶ 25, 273 Wis. 2d 136, 682 N.W.2d 29. The LIRC employed its expertise and specialized knowledge in interpreting Wis. Stat. § 102.18(1)(d). The statute has been in effect for 26 years, and the LIRC has issued approximately 130 decisions on § 102.18(1)(d). *See, e.g., Laughlin v. Tommy Bartlett, Inc.,* Claim Nos. 1999043589, 2002042491 (LIRC Aug.

18

31, 2004); *Greenwood v. Zurich Am. Ins. Co.*, Claim No. 1999046119 (LIRC Sept. 10, 2002). Finally, the LIRC has been consistent in its application of § 102.18(1)(d), such that its interpretation will provide uniformity in the application of the statute. *Beecher,* 273 Wis. 2d 136, ¶ 23. The LIRC has consistently declined to read § 102.18(1)(d) to mandate a range within which a PPD award must fall. *Sconzert v. Bay Engineered Castings, Inc.,* Claim No. 2000011312 (LIRC June 28, 2001); *Schouten v. Wis. Farmers Mut. Ins.,* Claim No. 89067604 (LIRC Mar. 10, 1994). Therefore, we accord the LIRC's interpretation of § 102.18(1)(d) great weight deference here, and we will sustain that interpretation, even if an alternative view of the law is just as reasonable or even more reasonable. *Brown,* 267 Wis. 2d 31, ¶ 19.

## III

¶ 21. In its brief, the LIRC argues that this court lacks subject matter jurisdiction or competency, because the Joint Committee for Review of Administrative Rules (JCRAR) was never served with a copy of the petition for review. The LIRC argues that service upon the JCRAR is required by Wis. Stat. § 227.40(5)[10]. This issue is better characterized as one of competency, not one of subject matter jurisdiction. *See Mueller v. Brunn,* 105 Wis. 2d 171, 175–76, 313 N.W.2d 790 (1982);[11] *Currier v. DOR,*

---

[10] Wisconsin Stat. § 227.40(5) provides in relevant part: "The joint committee for review of administrative rules shall be served with a copy of the petition in any action under this section and, with the approval of the joint committee on legislative organization, shall be made a party and be entitled to be heard."

[11] *Mueller v. Brunn,* 105 Wis. 2d 171, 313 N.W.2d 790 (1982), was clarified in *Village of Trempealeau v. Mikrut,* 2004 WI 79,

2006 WI App 12, ¶ 6 n.2, 288 Wis. 2d 693, 709 N.W.2d 520. Under the Wisconsin Constitution, circuit courts in Wisconsin have general original subject matter jurisdiction over "all matters civil and criminal." Wis. Const. art. VII, § 8; *In re Eberhardy,* 102 Wis. 2d 539, 550, 307 N.W.2d 881 (1981)(citations omitted). Here, the issue of competency to proceed was not raised before the circuit court, and we decline to disregard the resulting waiver. Under such circumstances, we need not address the issue of competency. *Village of Trempealeau v. Mikrut,* 2004 WI 79, ¶ 27, 273 Wis. 2d 76, 681 N.W.2d 190; *see also Mut. Fed. Sav. Loan Ass'n of Milwaukee v. Sav. Loan Review Bd. of Wis.,* 46 Wis. 2d 110, 116, 174 N.W.2d 554 (1970), which involves the general rule that an issue not raised before the circuit court need not be addressed by an appellate court.

## IV

■

¶ 22. We have concluded that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32(4)[12] is entitled to controlling weight deference. We will therefore uphold the agency's interpretation, unless such interpre-

---

¶ 29, 273 Wis. 2d 76, 681 N.W.2d 190, which held that a challenge to a circuit court's competency should be raised before the circuit court in order to be preserved for appellate review. In *Village of Trempealeau,* we stated,

> [T]he common-law waiver rule applies to challenges to the circuit court's competency, such that a challenge to the court's competency will be deemed waived if not raised in the circuit court, subject to the inherent authority of the reviewing court to disregard the wavier and address the merits of the unpreserved argument. . . .

*Id.,* ¶ 27.

[12] Wisconsin Admin. Code § DWD 80.32 provides in relevant part:

tation is " 'inconsistent with the language of the regulation or clearly erroneous.' " *Plevin v. DOT,* 2003 WI App 211, ¶ 13, 267 Wis. 2d 281, 671 N.W.2d 355 (citation omitted). An administrative agency that regularly works with the rules and regulations of another agency, whose actions it is authorized by the legislature to

---

(1) The disabilities set forth in this section are the minimums for the described conditions. However, findings of additional disabling elements shall result in an estimate higher than the minimum. The minimum also assumes that the member, the back, etc., was previously without disability. Appropriate reduction shall be made for any pre-existing disability.

Note: An example would be where in addition to a described loss of motion, pain and circulatory disturbance further limits the use of an arm or a leg. A meniscectomy in a knee with less than a good result would call for an estimate higher than 5% loss of use of the leg at the knee. The same principle would apply to surgical procedures on the back. The schedule of minimum disabilities contained in this section was adopted upon the advice of a worker's compensation advisory council subcommittee after a survey of doctors experienced in treating industrial injuries.

. . . .

(4) Knee

. . . .

Anterior cruciate ligament repair 10%

. . . .

(11) Back

. . . .

Note: It is the subcommittee's intention that a separate minimum 5% allowance be given for every surgical procedure (open or closed, radical or partial) that is done to relieve from the effects of a disc lesion or spinal cord pressure. Each disc treated or surgical procedure performed will qualify for a 5% rating. Due to the fact a fusion involves 2 procedures a 1) laminectomy (dissectomy) and a 2) fusion procedure, 10% permanent total disability will apply when the 2 surgical procedures are done at the same time or separately.

review, is in the best position to interpret such rules and regulations because the agency knows the specific purposes of the rules and regulations that have been promulgated, and has expertise in the area the agency is called upon to review. *Id.*

¶ 23. As discussed earlier, the LIRC was established for the purpose of reviewing claims issued by ALJs in three divisions of the DWD: Unemployment Insurance, Worker's Compensation, and Equal Rights. The LIRC was "created to have final review authority of Department interpretations." *DILHR v. LIRC,* 161 Wis. 2d 231, 245, 467 N.W.2d 545 (1991). The LIRC corrects errors and "helps to assure consistent statutory application." *Id.*

¶ 24. DaimlerChrysler argues that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32(4) has been inconsistent, and therefore should be given no deference. To illustrate, DaimlerChrysler notes that in *Hellendrung,* Claim No. 1999039147, and in the present case, the LIRC concluded that reductions for preexisting disabilities did not apply to the surgical procedures listed in Wis. Admin. Code § DWD 80.32. DaimlerChrysler asserts that, in *King v. DOT,* Claim Nos. 2001007515 and 2003012619 (LIRC Apr. 27, 2005), the LIRC counted previous surgeries listed in § DWD 80.32 as preexisting disabilities that should be subtracted from the final PPD assessment.

¶ 25. We disagree with DaimlerChrysler's assertion that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32 has been inconsistent. *King* is distinguishable from the present case because, in *King,* a second knee surgery was necessary because the applicant suffered from a second injury. The LIRC therefore reduced the disability determination for a preexisting

condition. *Id.* In the present case, May did not suffer a second knee injury, but rather had an unsuccessful first surgery. The LIRC therefore made no reduction for a preexisting condition, since May did not have such a condition. The LIRC's decision in this case is consistent with its decision in *Hall v. Consol. Thermoplastics,* Claim No. 1995022808 (LIRC Sept. 29, 1999). In *Hall,* the LIRC made it clear that, where a surgery is performed "to cure and relieve the effects of the same work injury[,]" the LIRC will not make a reduction in the amount awarded for post-injury surgeries by subtracting the minimum assessment for one surgery from a later surgery. *Id.* The LIRC's decision in this case is also supported by its conclusion in *Hellendrung,* Claim No. 1999039147, that a reduction under Wis. Admin. Code § DWD 80.32(1) is appropriate for previous losses of range of motion and amputations, but not for the surgical procedures listed in § DWD 80.32.

¶ 26. The language of Wis. Admin. Code § DWD 80.32 does not specify how repeat ligament repair procedures should be treated. Wisconsin Admin. Code § DWD 80.32(1) states that the minimum disability percentages are "[t]he minimums for the described conditions," and that additional disabling elements may result in an award higher than the listed minimum. The minimum specified in Wis. Admin. Code § DWD 80.32(4) for an ACL repair to the knee is 10 percent.

¶ 27. The LIRC notes that Wis. Admin. Code § DWD 80.32(4) uses substantially identical language and format to set forth the minimum percentage for loss of use following an ACL procedure in the knee as Wis. Admin. Code § DWD 80.32(11) uses to set forth the minimum percentages following a procedure for removal of disc material or fusion in the spine. Both

23

subsections describe the surgical procedure and then indicate the minimum loss of use rating.

¶ 28. Relying on *Wilson v. Waukesha County,* 157 Wis. 2d 790, 796, 460 N.W.2d 830 (Ct. App. 1990), the LIRC asserts that when substantially identical language is used in two subsections of the same administrative rule, the LIRC may consider an explanatory note discussing the meaning of language as used in one subsection, in order to interpret the language in the other subsection. In *Wilson,* the court of appeals used bill drafting records that discussed the meaning of a word in one subsection, in order to determine the meaning of the same word in another subsection of the same statute. *Id.* The LIRC asserts that it was reasonable to consider the note appended to Wis. Admin. Code § DWD 80.32(11) as being supportive of its interpretation of Wis. Admin. Code § DWD 80.32(4). Daimler-Chrysler asserts that the note to § DWD 80.32(11) applies only to that subsection, and that the DWD intended to give special effect to back procedures, and to exclude knee procedures.

¶ 29. To adopt DaimlerChrysler's argument would be to give different meanings to the same words within the same administrative rule. *See Gen. Castings Corp. v. Winstead,* 156 Wis. 2d 752, 759, 457 N.W.2d 557 (Ct. App. 1990)("We reject an interpretation which ascribes different meanings to the same word as it variously appears in a statute unless the context clearly requires such an approach."). It is a basic rule of construction that we attribute the same definition to a word both times it is used in the same statute or administrative rule. *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 663, 539 N.W.2d 98 (1995).

¶ 30. The text of Wis. Admin. Code §§ DWD 80.32(4) and (11) contains substantially similar wording. Absent any direction clearly requiring the LIRC to give different meanings to the same words, the LIRC did not err in concluding that the text of §§ DWD 80.32(4) and (11) should be interpreted in the same way. *See Gen. Castings Corp.,* 156 Wis. 2d at 759. Nor was it error, in light of *Wilson,* 157 Wis. 2d at 796, for the LIRC to conclude that, just as additional minimum PPD percentages are allowable for repeat surgical spinal procedures, additional minimum PPD percentages are allowable for repeat surgical procedures to the knee.[13]

---

[13] The dissent, in ¶¶ 61–62, claims that the LIRC's decision is inconsistent with the intent of the Worker's Compensation Advisory Council Subcommittee (subcommittee). Notes to Wis. Admin. Code §§ DWD 80.32(1) and (11), resulting from the work of the subcommittee, show that the subcommittee intended to allow at least additional minimum PPD percentages to be applied for repeat or multiple surgical procedures. With respect to surgical procedures to the back, the note to § DWD 80.32(11) states in relevant part: "It is the subcommittee's intention that a separate minimum 5% allowance be given for every surgical procedure . . . that is done to relieve from the effects of a disc lesion or spinal cord pressure." As the LIRC points out in its brief, a note to § DWD 80.32(1) states in relevant part: "A meniscectomy in a knee with less than a good result would call for an estimate higher than [the minimum in the code for a meniscectomy with excellent to good results]. The same principle would apply to surgical procedures on the back." These two notes, reflecting the intention of the subcommittee, strongly support the conclusion that the administrative rule was intended to be applied uniformly, regardless of whether the surgical procedure was to the knee, the back, or another part of the body, and that the subcommittee intended that at least additional minimum PPD percentages be allowed for repeat or multiple surgical procedures for the same work injury.

██

¶ 31. DaimlerChrysler goes on to assert that there cannot be an award for both of May's ACL surgeries because Wis. Admin. Code § DWD 80.32(1) requires reduction for preexisting disabilities. As we noted previously, *Hellendrung,* Claim No. 1999039147, is instructive on this point. In *Hellendrung,* the LIRC determined that a reduction under § 80.32(1) is appropriate for previous losses of range of motion and amputations, but not for the surgical procedures listed in Wis. Admin. Code § DWD 80.32. Anterior cruciate ligament reconstruction is one of the procedures listed in Wis. Admin. Code § DWD 80.32(4) and the LIRC's decision not to make a reduction for preexisting disability was, therefore, reasonable and consistent with the intended purpose. There was no preexisting disability or condition that predated May's original injury at work in April 1999.

¶ 32. Moreover, the preamble of Wis. Admin. Code § DWD 80.32 provides for "[m]inimum percentages of loss of use for amputation levels, losses of motion, sensory losses and surgical procedures." Statutes should be interpreted so that every word is given effect. *Donaldson v. State,* 93 Wis. 2d 306, 315, 286 N.W.2d 817 (1980). We construe administrative rules in the same manner as statutes. *Baierl v. McTaggart,* 2001 WI 107, ¶ 21, 245 Wis. 2d 632, 629 N.W.2d 277. The plural usage of "surgical procedures" in the preamble of § DWD 80.32 supports a conclusion that multiple or repeat surgical procedures are contemplated by the administrative rule.[14]

---

[14] Contrary to the position taken in ¶ 45 of the dissent, the LIRC's conclusion that additional minimum PPD percentages are allowable for repeat surgical procedures to the knee is an

¶ 33. It is not necessary for this court to address DaimlerChrysler's hypothetical assertion that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32(4) may lead to awards greater than 100 percent PPD. Worker's compensation cases are fact-intensive and, for this reason, we need not deal "with any of the hypothetical situations posed by the appellants." *Town of Russell Volunteer Fire Dept. v. LIRC,* 223 Wis. 2d 723, 738, 589 N.W.2d 445 (Ct. App. 1998). However, we are cognizant of the case of *Blau v. Pecks Feed & Grain, Inc.,* Claim No. 1988015510 (LIRC July 19, 2001), in which the LIRC applied Wis. Stat. § 102.44(4),[15] and, based on that statute, determined that an employee may not be awarded PPD in excess of 100 percent.

entirely reasonable one. The LIRC's decision contains a reasoned analysis that is consistent with the language of Wis. Admin. Code § DWD 80.32, the notes resulting from the work of the subcommittee, and the policy concerns underlying Wisconsin's Worker's Compensation Act. The LIRC's decision recognizes that repeat or multiple surgeries have a cumulative, negative effect on function of the body part upon which they are performed. The LIRC's decision is also consistent with the well-established principle "that the Worker's Compensation Act, ch. 102, Stats., is to be liberally construed to effectuate its goal of compensating and making injured workers whole. . . ." *ITW Deltar v. LIRC,* 226 Wis. 2d 11, 18, 593 N.W.2d 908 (Ct. App. 1999).

[15] Wisconsin Stat. § 102.44(4) provides in relevant part: "Where the permanent partial disability is covered by Wis. Stat. § 102.52, 102.53 and 102.55, such sections shall govern; provided, that in no case shall the percentage of permanent total disability be taken as more than 100 percent."

The assessment of disability to the extremities, such as the knee, is regulated by Wis. Stat. § 102.52, which determines percentages of disability based upon the maximum number of weeks allocated by the legislature for the injured body part.

V

¶ 34. As noted previously, where great weight deference is given to the LIRC's interpretation and application of a statute such as Wis. Stat. § 102.18(1)(d),[16] this court will not substitute its view of the law for that of the LIRC, and will sustain the agency's conclusions of law if they are reasonable. *Brown,* 267 Wis. 2d 31, ¶ 19.

¶ 35. DaimlerChrysler asserts that the LIRC erred in awarding May 20 percent PPD because Wis. Stat. § 102.18(1)(d) prohibits determinations in excess of the highest medical assessment in the record. DaimlerChrysler further asserts that the LIRC's interpretation of Wis. Admin. Code § DWD 80.32(4) contravenes the language of § 102.18(1)(d). DaimlerChrysler asserts that § 102.18(1)(d) refers to an estimate of PPD that is "made by a practitioner which is in evidence" and that the statute specifically prohibits the LIRC from awarding PPD higher than the highest or lower than the lowest estimate in evidence. We disagree with DaimlerChrysler's argument that the LIRC's interpretation of § DWD 80.32(4) is inconsistent with § 102.18(1)(d).

¶ 36. Wisconsin Stat. § 102.18(1)(d) does not prohibit deviation from the range specified. Rather, § 102.18(1)(d) states clearly that any award within the

---

[16] Wisconsin Stat. § 102.18(1)(d) provides in relevant part:

Any award which falls within a range of 5% of the highest or lowest estimate of permanent partial disability made by a practitioner which is in evidence is presumed to be a reasonable award, provided it is not higher than the highest or lower than the lowest estimate in evidence.

range prescribed by the statute is "presumed to be a reasonable award. . . ." The statute does not state that an award outside of the prescribed range is unreasonable. Furthermore, § 102.18(1)(d) does not prohibit the DWD from setting minimum loss of use percentages by administrative rule. Administrative rules must be construed to be harmonious with statutory law dealing with the same subject matter, if it is feasible. *Sommerfield v. Sommerfield,* 154 Wis. 2d 840, 847, 454 N.W.2d 55 (Ct. App. 1990).

¶ 37. As noted previously, Wis. Stat. § 102.18(1)(d) provides in relevant part:

> Any award which falls within a range of 5% of the highest or lowest estimate of permanent partial disability made by a practitioner which is in evidence is presumed to be a reasonable award, provided it is not higher than the highest or lower than the lowest estimate in evidence.

The first step of statutory interpretation is to look at the language of the statute; if the plain meaning is clear, a court need not look to the rules of statutory construction or to extrinsic sources of interpretation. UFE Inc., 201 Wis. 2d at 281. We assume that the legislature's intent is expressed in the statutory language. *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110.

¶ 38. DaimlerChrysler, the LIRC, and May all took the position, in their respective briefs and at oral argument, that the language of Wis. Stat. § 102.18(1)(d) is clear and unambiguous. We agree, and therefore we need not resort to extrinsic sources such as legislative history; we simply apply the language of an unambigu-

ous statute to the facts before us. *Bosco v. LIRC,* 2004 WI 77, ¶ 24, 272 Wis. 2d 586, 681 N.W.2d 157 (citing *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 20, 260 Wis. 2d 663, 660 N.W.2d 656). A statute is not ambiguous merely because the parties disagree as to its meaning, as they do here. *Id.,* ¶ 7.

¶ 39. Wisconsin Stat., ch. 102, expressly recognizes PPD awards based on percentages set forth by the DWD. Wisconsin Stat. § 102.32(6)(b) states that "permanent disability can be determined based on a minimum permanent disability rating promulgated by the department by rule. . . ." For the reasons stated herein, we conclude that the LIRC's interpretation of Wis. Stat. § 102.18(1)(d) is reasonable. As noted previously, in order for the LIRC's interpretation of § 102.18(1)(d) to be accorded great weight deference, four requirements must be met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity in the application of the statute. *UFE Inc.,* 201 Wis. 2d at 284. Since all four requirements have been met here, we will sustain the LIRC's interpretation of § 102.18(1)(d) even if an alternative view is just as reasonable or more reasonable. *Brown,* 267 Wis. 2d 31, ¶ 19.

¶ 40. Relying on *Pfister & Vogel Tanning Co. v. DILHR,* 86 Wis. 2d 522, 273 N.W.2d 293 (1979), DaimlerChrysler further argues that there is no credible evidence in the record to support a 20 percent PPD award to May. In *Pfister,* physicians estimated that the plaintiff suffered either a 5 percent or a 15 percent

30

disability, and DILHR made a 20 percent disability award. *Id.* This court reversed the circuit court's affirmance of the award, holding that the award was not based upon credible evidence, and that there was error since the impairment of earning capacity had not been considered. *Id.* at 524, 530–31. The percentages listed in Wis. Admin. Code § DWD 80.32 set the minimum loss of use percentage that may be awarded for each listed procedure, regardless of whether there is a doctor's estimated PPD in evidence. The minimum percentages are the product of a survey of practitioners with expertise in treating persons who have undergone the listed procedures, and of practitioners with expertise in assessing permanent partial disability.

¶ 41. However, *Pfister* was decided in 1978, while Wis. Stat. § 102.18(1)(d) was not enacted until 1980. *Pfister* was not decided based upon the current statute, and it never discussed the issue of the minimum PPDs set forth in Wis. Admin. Code § DWD 80.32. *Pfister,* therefore, is neither helpful nor instructive in regard to the circumstances presented here.

¶ 42. The LIRC's interpretation of Wis. Stat. § 102.18(1)(d) is reasonable. Since we accord great weight deference here, we affirm the LIRC's interpretation and application of § 102.18(1)(d) in this case.

## VI

¶ 43. In summary, we conclude that the LIRC's interpretations of Wis. Admin. Code § DWD 80.32(4) and Wis. Stat. § 102.18(1)(d) are entitled to— controlling deference and great weight deference, respectively, and that the LIRC's award of 20 percent permanent partial disability to May should be upheld.

¶ 44. The certified question before this court is whether the LIRC may interpret Wis. Admin. Code

§ DWD 80.32(4) to award a cumulative minimum PPD for multiple ligament repair procedures, where the resulting award is higher than the highest medical estimate of PPD in evidence. We answer this question in the affirmative. We hold that § DWD 80.32(4) may be interpreted to award a cumulative minimum PPD for multiple ligament repair procedures, even though the award by the LIRC is higher than the highest medical estimate in the record. We further hold that Wis. Stat. § 102.18(1)(d) does not prohibit determinations in excess of the highest medical assessment in evidence, but rather creates a presumption of reasonableness for PPD awards that fall within the prescribed range. We therefore affirm the decision of the circuit court, which affirmed the LIRC's award of 20 percent PPD to May.

*By the Court.*—The order of the circuit court is affirmed.

¶ 45. PATIENCE DRAKE ROGGENSACK, J. (*dissenting*). The LIRC concluded that two surgical procedures necessary to repair one anterior cruciate ligament injury result in a 20 percent permanent partial disability of Glenn R. May's left leg at the knee. The majority opinion concludes this is reasonable, even though the only medical evidence admitted places May's disability at 10 percent. Majority op., ¶ 2. It does so largely because of the deference it accords the LIRC's interpretation of Wis. Stat. § 102.18(1)(d) and Wis. Admin. Code § DWD 80.32(4). *Id.* The standards of review the majority opinion employs prevent a reasoned analysis of the legal issue presented, which when undertaken, demonstrates that May incurred one scheduled permanent disability, the extent of which is a factual determination that turns on the functional condition of his knee after he reached his final healing

plateau. Because proof of the existence and the extent of a functional disability are factual issues to be determined when a scheduled permanent disability is under consideration and because the LIRC's factual determination is contrary to uncontradicted, credible medical evidence that the extent of May's scheduled permanent disability is 10 percent, the LIRC's decision is not supported by credible and substantial evidence and therefore is erroneous. Accordingly, I respectfully dissent.

## I. BACKGROUND

¶ 46. The dispositive facts are not disputed. In 1999, May suffered a workplace injury to his left knee. As a result of that injury, he had two surgical procedures performed on May 5, 1999: a meniscectomy and an anterior cruciate ligament autograft.[1] Daimler-Chrysler paid May temporary total disability during his recuperative period. When May returned to work and had reached a healing plateau, the orthopedic surgeon who performed the knee surgery, Dr. Ansari, opined that the injury caused May a 15 percent permanent partial disability of his left leg at the knee, due to a 5 percent disability caused by the torn meniscus and a 10 percent disability caused by the torn anterior cruciate ligament.

¶ 47. After several months at work, May's knee began to interfere with his work, in that it swelled, was painful and was stiff. He again consulted Dr. Ansari, who opined that the first anterior cruciate repair had not held up well. He recommended a second surgery. The second surgery did not involve a meniscectomy, but involved a repair of only the anterior cruciate ligament,

---

[1] In an autograft, tissue from another part of the patient's body is removed and employed to repair the patient's injury.

33

this time with an allograft.[2] Following the second surgery, May again was paid temporary total disability until he returned to work. Once he had reached a healing plateau, Dr. Ansari opined that the second surgery had been successful in repairing May's torn anterior cruciate ligament and that May's permanent partial disability had not increased beyond the 10 percent level he had prior to the second surgery. Dr. Ansari explained, "He has 10 percent PPD to the left knee due to ACL reconstruction. In my opinion *his PPD has not changed* due to redo of his anterior cruciate ligament." (Emphasis added.)

¶ 48. The LIRC rejected Dr. Ansari's medical opinion that the permanent condition of May's knee had not changed subsequent to the second surgery, and instead it adopted the opinion of an administrative law judge who stacked two minimum disability percentages for anterior cruciate ligament repair found in Wis. Admin. Code § DWD 80.32(4). The majority opinion affirms the LIRC's determination that stacking minimum disability values from § DWD 80.32(4) is reasonable even though the benefits awarded are more than 5 percent higher than the uncontradicted, credible medical evidence in the record. Majority op., ¶ 3.

## II. DISCUSSION

A. Standard of Review

¶ 49. We review the LIRC's decision, not that of the circuit court. *Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). The cause and the extent of a disability under worker's

---

[2] An allograft involves use of tissue that is taken from a source other than the patient's body, often from a cadaver.

compensation law are questions of fact for which the LIRC's determination is conclusive if supported by credible and substantial evidence. Wis. Stat. § 102.23(6);[3] *Vande Zande v. DILHR,* 70 Wis. 2d 1086, 1095, 236 N.W.2d 255 (1975) (citing *Transamerica Ins. Co. v. DILHR,* 54 Wis. 2d 272, 276, 195 N.W.2d 656 (1972)). When "facts are undisputed and only one reasonable inference can be drawn from the facts and that inference is contrary to the conclusion drawn by LIRC, we must overrule LIRC." *Leist v. LIRC,* 183 Wis. 2d 450, 458, 515 N.W.2d 268 (1994). The application of statutes or administrative rules are questions of law. *Beecher v. LIRC,* 2004 WI 88, ¶ 22, 273 Wis. 2d 136, 682 N.W.2d 29. Although the majority opinion correctly sets out the standards of review that are often employed when we review an agency's application of statutes or administrative rules, majority op., ¶ 2, this case turns on whether the LIRC can ignore uncontradicted, credible medical evidence and substitute its own judgment about the existence and the extent of a medical condition.

B. Permanent Partial Disability

1. General principles

¶ 50. A worker who has suffered a work-related injury may recover for a permanent disability at the end

---

[3] Wisconsin Stat. § 102.23(6) states in relevant part:

> If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

of his healing period. Wis. Stat. § 102.44(2)-(4). There are two categories of permanent disability: permanent total disability and permanent partial disability. *See* § 102.44(2) and (4). Each type of permanent disability resulting from a work-related injury is further separated into two types of disabilities: scheduled disabilities and unscheduled disabilities. *Langhus v. LIRC,* 206 Wis. 2d 494, 498–99, 557 N.W.2d 450 (Ct. App. 1996).

¶ 51. The scheduled disabilities are addressed in Wis. Stat. §§ 102.52, 102.53 and 102.55. *Id.* at 498. The total benefits for an injury that results in a scheduled permanent disability to a body part are established by the benefit weeks set out in § 102.52(1)-(18). *Id.* at 498–99. If the type of permanent disability listed in the statute results in less than a total permanent disability of the body, the benefit weeks are calculated as a percentage of loss of function for that part of the body that is listed in the schedule. Wis. Stat. § 102.55(3). With a scheduled disability, the benefits are limited, as directed by Wis. Stat. § 102.44(4).[4] *Hagen v. LIRC,* 210 Wis. 2d 12, 23, 563 N.W.2d 454 (1997); *Langhus,* 206 Wis. 2d at 498.

¶ 52. If the work-related permanent disability is not a disability that is scheduled under Wis. Stat. §§ 102.52, 102.53 or 102.55, it is characterized as an "unscheduled" permanent disability. *Hagen,* 210 Wis. 2d at 18. When the permanent disability is unscheduled, a loss of earning capacity is not presumed to follow a loss

---

[4] Wisconsin Stat. § 102.44(4) states: "Where the permanent disability is covered by ss. 102.52, 102.53 or 102.55, such sections shall govern; provided, that in no case shall the percentage of permanent total disability be taken as more than 100 per cent."

of function. *Kurschner v. DILHR,* 40 Wis. 2d 10, 18, 161 N.W.2d 213 (1968). Rather, a loss of earning capacity in the same or other suitable employments is a crucial element that the injured employee must prove before an unscheduled permanent disability can be found to exist. *N. States Power Co. v. Indus. Comm'n,* 252 Wis. 70, 73–74, 30 N.W.2d 217 (1947).

¶ 53. If the injury causes an unscheduled permanent disability that is partial, the benefits are calculated by determining the percentage of disability as "compared medically with injuries that would render a person permanently totally disabled for industrial purposes as provided in sec. 102.44(2) . . . ."[5] *Kurschner,* 40 Wis. 2d at 18. The calculation of benefits due to an unscheduled disability is accomplished by applying the percentage of loss of earning capacity to 1,000 benefit weeks. Wis. Stat. § 102.44(3). A back injury is an unscheduled injury. *Hagen,* 210 Wis. 2d at 23; *Pfister & Vogel Tanning Co. v. DILHR,* 86 Wis. 2d 522, 523, 273 N.W.2d 293 (1979); *Langhus,* 206 Wis. 2d at 501.

¶ 54. An accurate analysis of the proof that is sufficient to support a worker's compensation award for a permanent disability requires an initial classification of whether the disability is scheduled or unscheduled. *See Pfister,* 86 Wis. 2d at 527–28. This is so because an unscheduled permanent disability benefit cannot be based solely on an impairment of bodily function, but also requires proof of an impairment of earning capacity. *Id.* However, proof of a scheduled disability will be sufficient if that proof establishes a functional medical impairment to a body part. *Id.; Mednicoff v. DILHR,* 54

---

[5] Wisconsin Stat. § 102.44(2) states in relevant part: "In case of permanent total disability aggregate indemnity shall be weekly indemnity for the period that the employee may live."

Wis. 2d 7, 12, 194 N.W.2d 670 (1972). In explaining the different analyses to be applied to an unscheduled disability as compared with a scheduled disability, we noted that,

[I]t appears that the injuries of an applicant (non-schedule but permanent total or partial) are to be compared medically with injuries that would render a person permanently totally disabled for industrial purposes as provided in sec. 102.44(2), Stats., and not to injuries that would totally disable a person functionally without regard to loss of earning capacity.

*Id.* at 11 (citing *Kurschner,* 40 Wis. 2d at 18).

¶ 55. Most of the disabilities listed in Wis. Admin. Code § DWD 80.32 are scheduled disabilities. However, a permanent disability of the back, § DWD 80.32(11), is an unscheduled disability. *Hagen,* 210 Wis. 2d at 23; *Langhus,* 206 Wis. 2d at 501; *see also Pfister,* 86 Wis. 2d at 523. We have held that the LIRC errs when it determines the extent of an unscheduled permanent disability by comparing the "employee's injuries to those of a hypothetical person totally disabled functionally and not to one totally disabled as to loss of earning capacity." *Pfister,* 86 Wis. 2d at 529. And as explained above, proof of loss of earning capacity is not required of a scheduled permanent disability because unscheduled and scheduled permanent disabilities have different foundations. *Kurschner,* 40 Wis. 2d at 18. The proof of a scheduled permanent disability is complete once the functional level of the disability has been proven, regardless of its actual impact on the employee's earning capacity. *Mednicoff,* 54 Wis. 2d at 12. Stated otherwise, the legislature has presumed a loss of earning capacity as a part of the number of benefit weeks it chose for each category of scheduled permanent disability. *Id.* The LIRC cannot change the permanency schedules

established in the statutes or the proof required to accord benefits under those schedules. *Leist,* 183 Wis. 2d at 457; Wis. Stat. § 102.55(3); Wis. Stat. § 102.44(4).

### 2. May's permanent disability

¶ 56. May's work-related injury to his knee caused a scheduled permanent disability.[6] Wis. Stat. § 102.52(11); *Mednicoff,* 54 Wis. 2d at 13; *Langhus,* 206 Wis. 2d at 501. Accordingly, May's compensation for the permanent partial disability to his leg at the knee is limited by statute. *Hagen,* 210 Wis. 2d at 23.

¶ 57. The LIRC cannot base its judgment about the existence and the extent of May's disability on speculation. *Leist,* 183 Wis. 2d at 457. To do so would permit the LIRC to exercise its judgment arbitrarily. *Id.* The statutory provisions are May's exclusive remedy. *Id.* In order to qualify as a permanent disability, a knee injury requires medical proof of the existence and functional extent of the change in condition of the knee. Wis. Stat. §§ 102.13(1)[7] and 102.52(11).

---

[6] The LIRC did not overtly state that May's disability was scheduled; however, the calculation made in the LIRC's decision that is now under consideration demonstrates that the LIRC concluded that May incurred a scheduled permanent disability. To explain, the LIRC awarded 20 percent permanent partial disability, which it said equaled 85 weeks of benefits. The benefit weeks for a total scheduled disability of the leg at the knee is 425 weeks. Wis. Stat. § 102.52(11). Twenty percent of 425 weeks equals 85 weeks. By contrast, an unscheduled injury at 20 percent would equal 200 weeks, as 20 percent of 1000 weeks equals 200 weeks. Wis. Stat. § 102.44(3).

[7] Wisconsin Stat. § 102.13(1) requires an employee who seeks compensation for a work-related injury to submit to an employer's request for a reasonable medical examination by a

¶ 58. Here, the report of Dr. Ansari was received into evidence without objection. Therefore, it is prima facie evidence of the existence and the extent of May's permanent partial disability. *Leist,* 183 Wis. 2d at 459. Dr. Ansari gave the only contemporaneous opinion of the actual condition of May's knee. He was May's treating physician for many years. He had repeatedly seen May and evaluated his medical condition and May's resulting permanent disability. The minimum percentage of disability set out in Wis. Admin. Code § DWD 80.32(4), i.e., 10 percent permanent partial disability for an anterior cruciate ligament repair, is only an average value based on a state-wide survey of physicians. It is not patient-specific, and therefore, it is not competent evidence of the actual condition of May's knee. Absent some reason to reject Dr. Ansari's opinion, the percentages of permanency set out in § DWD 80.32(4) cannot contradict Dr. Ansari's particularized medical evaluation of May's actual disability. Let me explain.

¶ 59. The Worker's Compensation Advisory Council (Advisory Council) assisted in establising Wis. Admin. Code § DWD 80.32 as guidelines that physicians were to consult in determining the levels of permanent disability for individual claimants. The guidelines were constructed after consultation with physicians throughout the state, who responded to the survey based on their experiences with many patients. A large revision to these guidelines was made in 1973–74 and again in 1993–94 to form the current version of § DWD 80.32.

---

physician of the employer's choosing. Refusal to submit to such an exam will result in the suspension of the employee's right to commence or continue an action for benefits under ch. 102. § 102.13(1)(c).

¶ 60. The physician surveys used for these updates asked physicians to comment about the effect on the condition of various parts of the body for a variety of injuries and repairs. The results from the 1993 survey were tabulated by four administrative law judges and a worker's compensation assistant, Margaret O'Connell. They chose the values for some subsections of § DWD 80.32 due to the "substantial agreement among the doctors" and in other areas where there was "such substantial disagreement" they made no recommendation. Margaret O'Connell March 16, 1993 Memorandum to Worker's Compensation Advisory Council Sub-Committee Members (hereinafter "O'Connell Memorandum"). In regard to permanent disability of the leg at the knee, O'Connell related:

> B1 & 2. We believe 102.32(4) should be amended to show that the 5 percent minimum for removal of semilunar cartilage applies to all procedures open or closed, total or partial since there has been an interference with the anatomical structure of the knee. The Department has attempted to interpret the current rule in this manner but with disputes from carriers and increases in litigation which would be avoided with amendment.

> B3. We would give anterior cruciate ligament repairs a 10 percent minimum to be graded upward with symptoms.

*Id.,* p. 2.

¶ 61. The "Analysis of Proposed Rules" that was used for the creation of current Wis. Admin. Code § DWD 80.32 explains:

> 1. The conditions described in the rule cause permanent disability. By creating standards for evaluation the rule assures uniform payments for the same disabling conditions. . . .

41

. . .

3. A minimum 5% permanent disability rating for removal of semi-lunar cartilage in the knee shall apply to all procedures. Physicians responding to the survey indicated that regardless of the type of surgical procedure performed there is a change in the anatomical structure of the knee justifying a 5% permanent disability rating for any procedure used. . . .

4. The rule pertaining to the knee is amended to include a minimum permanent disability rating for surgical repair to the anterior cruciate ligament. The physicians responding to the survey felt that a 10% disability rating is appropriate because there has been an interference with the anatomical structure of the knee following the surgical repair.

Analysis of Proposed Rules, Rule No. Ind 80.32, Hearing Draft of Proposed Rules, DILHR, ii-iii (hereinafter "Analysis of Proposed Rules"). The "all procedures" addressed in paragraph 3 of the Analysis of Proposed Rules refers to whether the surgical procedure performed to repair a knee injury was a closed procedure[8] or an open procedure. *See* O'Connell Memorandum, p. 2. Nothing in the Analysis of Proposed Rules implies that each time a repair is attempted for a single knee injury, the evaluating physician is to increase the percentage of disability.

¶ 62. In contrast, the Analysis of Proposed Rules could be read to suggest that when a back injury leads to a permanent disability each surgical procedure is to be awarded additional percentages of disability.

8. The rule pertaining to minimal permanent disability for the back is amended to clarify the permanent disability *due for surgical procedures*. A minimum 5%

---

[8] Closed surgery of the knee is done by arthroscopy.

allowance will be given *for every surgical procedure which is performed* to relieve an individual from the effects of a disc lesion or spinal cord pressure.

Analysis of Proposed Rules, iii (emphasis added). A disability of the back, an unscheduled disability, was the only disability amendment made in the 1993–94 amendments that suggested a minimum disability allocation for "every surgical procedure which is performed," without regard to the disability that actually resulted. This difference is consistent with the comment of the Advisory Council that is shown at the subcommittee note for § DWD 80.32(11).

¶ 63. I could not find any explanation from the Advisory Council for the difference in treatment of a back disability as compared with the scheduled permanent disabilities that are also listed in Wis. Admin. Code § DWD 80.32. However, because a back disability is an unscheduled permanent disability, and as such it is not eligible for benefits absent proof of its effect on a claimant's earning capacity, *Pfister,* 86 Wis. 2d at 528, it is probable that the Advisory Council wanted to give physicians some assistance in tying the unscheduled permanent disability to loss of earning capacity.

¶ 64. However, whatever the Advisory Council's motivation, § DWD 80.32 was created to be, and remains, only a guideline that physicians who evaluate worker's compensation injuries are to consult. In addition, as we have explained, "LIRC cannot reject a medical opinion unless there is something in the record to support its rejection." *Leist,* 183 Wis. 2d at 460 (citing *Erickson v. DILHR,* 49 Wis. 2d 114, 181 N.W.2d 495 (1970)). Therefore, absent a concession by the employer, the values in § DWD 80.32 cannot override a physician's credible opinion based on his individualized

43

evaluation of the worker's actual disability that resulted from a workplace injury. *Id.* at 459. Here, Dr. Ansari, May's treating physician, gave his medical opinion that May's permanent partial disability had not changed as a result of the second surgery. He said that May continued to have a 10 percent permanent partial disability due to the injury to his torn anterior cruciate ligament.[9]

C. Wisconsin Stat. § 102.18(1)(d)

¶ 65. The parties take differing views of the impact of Wis. Stat. § 102.18(1)(d) on the outcome of this case. DaimlerChrysler contends that the LIRC erred by stacking two minimum percentages from the administrative guidelines contained in Wis. Admin. Code § DWD 80.32, to accord May a 20 percent permanent partial disability. DaimlerChrysler contends that because the sole expert opinion in evidence opines that May has only a 10 percent permanent partial disability of his left leg at the knee, the LIRC's award contradicts § 102.18(1)(d). The LIRC and May contend that § 102.18(1)(d) does not preclude the LIRC's decision that May sustained a 20 percent permanent partial disability.

¶ 66. Wisconsin Stat. § 102.18(1)(d) states in relevant part:

---

[9] Dr. Ansari opined that May initially had a 15 percent disability of his left leg, due to two distinct injuries to which Dr. Ansari attributed differing percentages of permanent partial disability. Dr. Ansari opined that May had a 5 percent disability caused by a torn meniscus and a 10 percent disability caused by a torn anterior cruciate ligament. May was paid for both permanent partial disabilities before the second surgery was performed on his anterior cruciate ligament. The 5 percent permanent partial disability from the torn meniscus was not a subject of this appeal.

> Any award which falls within a range of 5% of the highest or lowest estimate of permanent partial disability made by a practitioner which is in evidence is presumed to be a reasonable award, provided it is not higher than the highest or lower than the lowest estimate in evidence.

I agree with the majority opinion's conclusion that Wis. Stat. § 102.18(1)(d) sets a range within which an award will be presumed to be a reasonable award. Majority op., ¶ 3. However, that conclusion determines only that there is no presumption of reasonableness for the 20 percent award the LIRC made because it is more than 5 percent higher than the highest physician's opinion in evidence.

¶ 67. The majority opinion does not answer the question presented here: Whether the LIRC erred in awarding benefits that are more than 5 percent higher than the highest medical opinion in evidence based on nothing except its interpretation of the guidelines for physician evaluations contained in Wis. Admin. Code § DWD 80.32(4), in the face of contrary, uncontradicted, credible medical testimony. I conclude that the LIRC erred because Dr. Ansari's opinion is uncontradicted, and it does not lack credibility. *Leist,* 183 Wis. 2d at 459. As I explained above, May has been Dr. Ansari's patient for many years. May repeatedly has been seen and evaluated by Dr. Ansari. Furthermore, the LIRC gave no reason why Dr. Ansari's opinion was insufficient to establish the existence and the extent of May's permanent partial disability.

¶ 68. By way of analogy, if May had incurred a second disability, for example from an injury to his back, he would have been required to provide proof of the existence and permanency of each injury, in order to receive a second permanent partial disability award.

45

Wis. Stat. § 102.175; *see Vande Zande,* 70 Wis. 2d at 1093. In a like manner, because May had only one injury that resulted in a permanent disability, in order to receive a second payment for the functional disability of his left leg at the knee, he must provide proof that his knee has deteriorated further than the 10 percent disability for which he has already been paid.

¶ 69. The majority opinion never acknowledges that the cause and the extent of a disability under worker's compensation law are questions of fact that require substantial and credible evidence to support them. Wis. Stat. § 102.23(6). Instead, it repeatedly discusses the standard of review for statutory interpretation, a question of law that has limited application here. *See, e.g.,* majority op., ¶¶ 10–20. It also attempts to skirt the problem posed by uncontradicted, credible medical testimony that is contrary to the LIRC's factual finding by focusing on generalized policy statements about making an injured worker whole. Majority op., ¶ 32 n.14. The majority opinion reasons that it should sustain the LIRC's findings because, "The LIRC's decision recognizes that repeat or multiple surgeries have a cumulative, negative effect on function of the body part upon which they are performed." *Id.* While I do not contest that repeating medical procedures *could* increase the disability that those procedures were undertaken to remedy, in this case, there is uncontradicted, credible, medical testimony that May's disability did not increase *subsequent to the second surgery.* In my view, when the LIRC ignores that testimony, it makes a finding about the extent of May's injury that is not supported by credible and substantial evidence as Wis. Stat. § 102.23(6) requires; accordingly, the LIRC's factual finding should be set aside. Wis. Stat. § 102.23(6).

46

¶ 70. And finally, the LIRC has been inconsistent in its evaluation of knee injuries. In *King v. DOT,* WC Claim Nos. 2001–007515 and 2003–012619 (April 27, 2005), the LIRC reduced the extent of King's permanent partial disability attributed to a second workplace injury due to an earlier permanent partial disability finding for the same knee. This demonstrates that permanent partial disability of the knee has not been expanded procedure by procedure in other decisions by the LIRC. Similarly, in *Hall v. DaimlerChrysler Corp.,* WC Claim No. 2001–037678 (April 15, 2004), the claimant had two knee surgeries after she injured her knee on January 6, 2000. She had a total knee replacement on March 6, 2001 and a repeat surgery done on April 18, 2001. The minimum for knee replacement is 50 percent permanent partial disability, but her surgeon opined that a greater level of disability was present because of a loss of range of motion. He assigned 60 percent permanent partial disability. The employer argued that the extent of the disability should be reduced because the claimant had undergone arthroscopic surgery in 1997. In refusing that request, the LIRC said that there had been no work restrictions following the 1997 surgery and no permanent disability rating was assessed in 1997. However, the LIRC also did not make any allocation of permanent partial disability due to the April 18, 2001 repeat surgery. Instead, it relied on the opinion of her surgeon when setting the extent of her disability. *Hall* is consistent with the position of this dissent: it is the physician's opinion about the condition of the knee that drives the extent of the permanent partial disability rating that is assigned, unless the employer simply concedes to accept the minimum set in Wis. Admin. Code § DWD 80.32(4).

## III. CONCLUSION

¶ 71. Because proof of the existence and the extent of a functional disability are factual issues to be determined when a scheduled permanent disability is under consideration and because the LIRC's factual determination is contrary to uncontradicted, credible medical evidence that the extent of May's scheduled permanent disability is 10 percent, the LIRC's decision is not supported by credible and substantial evidence and therefore is erroneous. Accordingly, I respectfully dissent.

¶ 72. I am authorized to state that Justices JON P. WILCOX and DAVID T. PROSSER join this opinion.